Yettanda L. ROHRER, Appellant,

v.

Howard E. ROHRER, Appellee.

Yettanda L. ROHRER, Appellee,

v.

Howard E. ROHRER, Appellant.

Superior Court of Pennsylvania.

Argued May 20, 1998.

Filed July 24, 1998.

Albert Momjian, Philadelphia, for Yettanda L. Rohrer.

John C. Howett, Jr., Harrisburg, for Howard E. Rohrer.

Before CAVANAUGH, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This case involves cross-appeals challenging the equitable distribution order by the plaintiff/appellant, Yettanda Rohrer, and the defendant/cross-appellant, Howard E. Rohrer, on the basis that the trial court erred in excluding, including and valuing assets as marital property, as well as awarding a 50/50 division of the assets. We affirm in part and reverse in part.[1]

The facts reveal that the parties were married in 1976 and had one child (Tahva, born 1980) before the plaintiff filed a complaint in 1992 seeking a Section 3301(c) divorce, equitable distribution, alimony (subsequently withdrawn), alimony pendente lite, counsel fees and expenses. After the defendant filed an answer and counterclaim, a master was appointed and five days of hearings followed in 1996. The master determined the value of the marital estate to be $2,089,100 and awarded each party roughly 50% of the assets. Each party filed exceptions, and, thereafter, the trial court entered an order denying the parties' exceptions save for the following: 1) the note payable to the plaintiff was to be considered a marital asset; 2) the Market Street property was a marital asset valued at $75,000 (versus $60,000); and 3) the "retained earnings" (totalling $542,036) were to be deducted from the defendant's business. Each party appealed.

Initially, we address the plaintiff's claim the trial court erred in excluding all "retained earnings" (instead of just 1992 forward) from the value of the defendant's businesses without regard to when they had accumulated. This alleged error undervalued the defendant's business assets by $238,316.

▆▆▆ In 1993, in a related support action, the plaintiff filed a complaint for child and spousal support. In 1994, the trial court entered a support order which directed that "[t]he master ... not include the retained earnings in valuing the equity in the [defendant's] companies for equitable distribution purposes" because the "pass through" income attributed to the parties was included in their net incomes for support calculation purposes.[2]

---

1. Our decision to reverse on the "retained earnings" issue does not minimize the trial court's efforts to advise this Court, in the form of a well-written opinion, of the basis for an otherwise proper disposition of the parties' complaints.

2. "Retained earnings" refer to a corporation's accumulated profits, i.e., the net sum of the cor-

■ To start with, money included in an individual's income for the purpose of calculating support payments may not also be labelled as a marital asset subject to equitable distribution. In *Cerny v. Cerny*, 440 Pa.Super. 550, 656 A.2d 507 (1995), we held the trial court erred if it characterized a lump-sum termination-payment from the husband's employer "as income available ... i[n] calculat[ing] husband's support obligation * * * [while] characterizing the same payment as a marital asset subject to equitable distribution." On remand, we instructed the court "to remove the payment from the marital property if it had been credited to husband as income in calculating his support obligation. The trial court determined that the payment had been so credited, and accordingly judged the $105,000.00 payment to be husband's separate property and not a marital asset." *Id.*, 656 A.2d at 509.

At bar,

> In 1994, in determining the parties' income for support purposes, th[e trial] Court wrote as follows[:]
>
>> We conclude therefore that the "pass-through" income [from S-chapter corporations] attributed to the parties will be included in their net incomes for support calculation purposes. The Master is therefore directed to not include the retained earnings in valuing the equity in these companies for equitable distribution purposes.
>
> *Rohrer v. Rohrer*, 1396 DR 1993, slip op. at 17 (Aug. 24, 1994).

The Master, instead of excluding all retained earnings from the value of the Rohrer businesses, excluded only those earnings retained for 1992 and forward. He did so because retained earnings prior to 1992 were not considered by the trial court in determining income for support

purposes. We agree with Husband that this was error. It was this Court's intention, in addressing this issue in 1994, that retained earnings be considered either an asset subject to equitable distribution or income, but not both. Thus, Wife, having been granted her request that retained earnings be characterized as income in the support proceedings, may not now have them characterized as a marital asset. Thus, instead of excluding $303,172 from the value of the Rohrer businesses, $542,036 should have been excluded.

Trial Court Opinion, 6/30/97 at 7–8 (Footnote omitted). We disagree.

In ordering support, the trial court clearly utilized the defendant's "pass through" income for years 1992 and 1993 ($148,112 and $133,345, respectively). This "pass through" income to the defendant was part of his total earnings for years 1992 ($230,000) and 1993 ($197,000), figures which were utilized by the trial court to determine support: 1993—$215.39 per week for child, $961.45 per week for spouse; 1994—$235.22 per week for child, $729.70 per week for spouse. The trial court considered no other years for which "pass through" income (totalling $238,864) was received to calculate support.

In *Cerny*, this Court was concerned that the lower court had included a single "lump sum" payment to the husband from his employer to calculate marital assets and support. In contrast to *Cerny*, we have no single payment being inserted into the support equation and the marital distribution cauldron. In fact, the defendant's "retained earnings" are divisible and distinguishable one from the other for the years attributed to him as income for federal and state tax purposes. The trial court stated as much in resolving the support issue; namely:

poration's yearly profits and losses. *Matter of Estate of Dawson*, 136 N.J. 1, 641 A.2d 1026, 1031 (1994).

Likewise, "pass through" income refers to an S corporation's ability (as was the case here) to allocate various items to the shareholders (to eliminate the double tax feature of corporations) based on the proportion of stock held in the corporation. The following items are allocated to and "pass through" to the stockholders based

on the percentage of stock held in the entity, e.g.: gains and losses from the sale and exchange of capital assets; interest and dividends on corporate investments and losses; tax-exempt interest; charitable contributions; and recovery of bad debts and prior taxes. J.K. Lasser, *1992 Income Tax Guide* at 430–431; Internal Revenue Service, *1997 Your Federal Income Tax For Individuals* at 201; 26 U.S.C.A. § 163(d)(5)(A).

... the retained earnings in these companies certainly have a major attribute of income, inasmuch as they are taxed as personal income by the federal and state income taxing authorities to the shareholders. We understand that these monies are not and have not actually been distributed to the parties, nor is it likely these monies will ever be distributed, dollar for dollar, should the companies ever be sold. We do note, however, in Husband's case, that distribution of these retained earnings would not be impossible nor is it clear to the Court such an occurrence would lead to the financial demise of these companies. The 1992 and 1993 Financial Statements for one company, H.E. Rohrer, Inc. for instance, indicates that in 1992 it purchased assets in excess of two million dollars, of which one million dollars in cash was provided by the company. (Def's Exhibit 4, p. 5). There is, therefore, cash in these companies available for distribution.

Trial Court Amended Opinion, 8/24/94 at 15.

■ We do not condone "double dipping", i.e., using the same revenue as a source for "support" and "equitable distribution". *Cerny, supra.* This would not occur here, however, because we are dealing with separate, annual amounts of revenue, albeit not all distributable yet on the books of the Rohrer entities as taxable events to the shareholder. Accordingly, we hold that inclusion of the "retained earnings" in the marital asset mix for years prior to 1992 would allow monies accumulated during the marriage to be equitably divided. To hold otherwise would permit assets to escape inclusion as marital property when untouched for and excluded from the support equation. To do less would be unjust and not effectuate "economic justice", the touchstone of Pennsylvania's Divorce Code.

The second complaint alleges the trial court erred in valuing Rohrer business assets (school buses) using a 1996 *Yellow Book* instead of a 1995 *Yellow Book*.

The parties agreed to value the assets in *question* per a Stock Purchase Agreement dated December 18, 1979, which read at Paragraph 7(b):

*Purchase price.* The purchase price for the shares of any Stockholder upon any disposition of such shares ... shall be the book value as of the valuation date. The following modifications shall be made to the book value of all of the shares.

\* \* \* \* \* \*

(b) There shall be added to or deducted from the book value of the shares of the Corporation the difference between the fair market value and book value after depreciation for all ... buses ... owned by the Corporation. The determination of fair market value of the property hereunder shall be made by appropriate appraisers....

The parties agreed that the net book value of the Rohrer business entities was $2,378,939 as of December 31, 1995. Under the Stock Purchase Agreement, the net book value was to be adjusted to fair market value. Prior to the August 1996 master's hearings, the parties entered into a stipulation to value the bus inventory as of December 31, 1995, in accordance to the "current" *Yellow Book*.

■ The plaintiff's accountant, using the 1995 *Yellow Book* without (seasonality) adjustments, listed the fair market value of the school buses at $621,341. The defendant's accountant, relying upon the 1996 *Yellow Book*, valued the inventory at $11,001 above book value. The trial court looked to the 1996 *Yellow Book* as the "current" book in choosing the adjusted value of $11,001. This was not error. Reliance upon the 1996 *Yellow Book* was proper inasmuch as it was the "current" book at the time the parties' stipulation was reached.

Finally, the plaintiff argues the trial court erred in characterizing her three shares of Millersburg TV company stock (valued at $211,000) as marital property. The plaintiff asserts the shares were acquired through a trust created by way of a will upon her grandfather's death in January of 1981, and, therefore, renders them exempt from equitable distribution under 23 Pa.C.S.A. § 3501:

(a) General Rule.—As used in this chapter, "marital property" means all property acquired by either party during the marriage, including the increase in value, prior

to the date of final separation, of any nonmarital property acquired pursuant to paragraphs (1) and (3), except:

\* \* \* \* \* \*

(3) Property acquired by gift, except between spouses, bequest, devise or descent.

\* \* \* \* \* \*

(b) Presumption.—All real or personal property acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by showing that the property was acquired by a method listed in subsection (a).

At the time the plaintiff's paternal grandfather died, he owned ten shares of Millersburg TV company stock. These shares were placed in trust for the plaintiff and her two sisters, and her father was named the trustee/executor of the grandfather's estate. In 1985, the trustee/executor sold the ten shares of stock to Miller Brothers Dairy, Inc. for $60,000.[3] In 1987, because Millersburg TV reorganized into a Subchapter S corporation and Miller Brothers Dairy was a C corporation, the Millersburg TV shares had to be distributed. The plaintiff was directed to "pay" $24,900 for her three shares. This was the value the dairy had paid for the stock in 1985. The plaintiff paid for her shares with a check drawn on the Community Bank account held jointly with the defendant.

The plaintiff testified that the cash transaction was necessary for tax purposes. The executor/trustee also testified that he never intended the transfer to be a sale of stock. Thus, the plaintiff asserts that merely because her inheritance changed form for tax purposes should not alter the characterization of the asset from non-marital to marital. *Winters v. Winters,* 355 Pa.Super. 64, 512 A.2d 1211 (1986). Neither the master nor the trial court believed the version of events testified to by the plaintiff.

"The difficulty here is that when such funds move in and out of marital accounts, it becomes impossible to determine those amounts that become dedicated to the marital use, and those amounts taken from the marital estate to be used for individual purposes." *Id.,* 512 A.2d at 1212. This is the case here, which counsels against us finding an abuse of discretion on the part of the trial court in disposing of this matter.

We next turn to the defendant/cross-appellant's claims, the first of which alleges the plaintiff waived her interest in the Rohrer businesses by executing a consent and joinder agreement on December 18, 1979; to-wit:

Yettanda L. Rohrer, wife of Howard E. Rohrer, III, intending to be legally bound, does hereby consent to and join in the foregoing Stock Purchase Agreement, executed by the parties herein, and does hereby release and quitclaim all right, title and interest in the said shares of the capital stock of that Corporation which she might have by right of dower, family exemption or under the intestate laws of any state, or otherwise.

The defendant contends the language is clear proof the plaintiff waived any right, title or interest in the Rohrer businesses. We disagree and hold "[t]he object of the joinder as construed was to prevent the interference in the enterprises by a spouse as between the stockholders. It was not intended or understood to preclude a spouse from having the value of the business considered in the event of an equitable distribution proceeding." Trial Court Opinion, 6/30/97 at 6.

Secondly, the defendant asserts the proceeds of an insurance policy insuring his father's life were erroneously included as marital property.

The parties stipulated that $25,000 of the value of H.E. Rohrer, Inc. was the defendant's non-marital property. However, the defendant asserts an additional $80,000 should have been deducted from the marital portion of H.E. Rohrer, Inc. and placed in his

---

**3.** Miller Brothers Dairy was a C corporation owned by the trustee/executor and his three children, one of whom was the plaintiff.

separate estate because it came from the proceeds of an insurance policy on his father's life, the premiums for which were paid by the father's company. Therefore, he avers, the proceeds were gifts excludable from the marital estate under *Campbell v. Campbell,* 357 Pa.Super. 483, 516 A.2d 363 (1986).

■ We find *Campbell* distinguishable in that there the father gave husband a one-half interest in a family firm (valued at $26,000). Father paid $6,000 of the value, making it a gift, and husband obtained a bank loan for the balance. With the father later satisfying the bank loan, this Court treated the husband's entire interest as a non-marital gift. *Id.,* 516 A.2d at 366–367. Here, the final insurance premiums for the policy on the father's life were *paid by H.E. Rohrer, Inc.* Because we may not ignore the legal distinction afforded a corporation as a separate entity from its shareholders, directors and officers for tax purposes and legal liability, the payment of the premiums initially by the defendant and then by the father's corporation render the proceeds marital.

The last three issues proffered allege error by the trial court in failing to consider tax ramifications in valuing the Rohrer business entities, in awarding a 50/50 split of the marital property and labelling as non-marital a $15,000 down payment for the Market Street property.

■ First, there is no anticipated sale of the Rohrer businesses required to satisfy the distribution scheme. Thus, any tax ramifications from their sale are too speculative to consider. *Hovis v. Hovis,* 518 Pa. 137, 541 A.2d 1378, 1380–1381 (1988); *Smith v. Smith,* 439 Pa.Super. 283, 653 A.2d 1259, 1269 n. 3 (1995). Second, the split of the marital estate: Plaintiff, $1,045,333; Defendant $1,043,-765, was reasonable in light of the factors listed at 23 Pa.C.S.A. § 3502, which were weighed by the trial court in a Solomon-like fashion in dividing the assets. *Gill v. Gill,* 450 Pa.Super. 611, 677 A.2d 1214, 1216 (1996). Third, contrary to the defendant's averment that "the lower court [erred when it] determined that the $15,000 down payment utilized to purchase 255 Market Street was [the plaintiff's] separate property[,]" the trial court did assign the $15,000 down pay-

ment marital property status: "We believe the Master erred ... in excluding $15,000 (down payment) from the value of 255 Market Street as non-marital property." Trial Court Opinion, 6/30/97 at 13. Consequently, this argument is belied by the record.

Order affirmed in part, reversed in part and case remanded for a *procedendo.* Jurisdiction is not retained.