Kokolis v. Kokolis

*David M. Neuhart,* for plaintiff.

*Brian C. Vertz* and *Benjamin E. Orsatti,* for defendant.

WECHT, *J.,* July 18, 2006—Theodore P. Kokolis (Husband) has timely appealed from this court's May 23, 2006 order. That order dismissed Husband's exceptions to the recommendations of Hearing Officer Patricia G. Miller Esquire. The May 23 order also disposed of the two exceptions filed by Judith C. Kokolis (Wife) by granting one, and dismissing the other.

## BACKGROUND

Husband and Wife married on January 5, 1963, separated on July 1, 1999, and divorced on October 3, 2001. After evidentiary hearing, this court (per the Honorable Kevin G. Sasinoski, J.) issued an order on April 18, 2001 disposing of economic claims. The court awarded Wife 60 percent of the marital assets in equitable distribution, granted Wife $2,000 per month alimony for 60 months, and directed that each party bear his/her own counsel fees. Neither party appealed.

On October 27, 2005, Wife filed a petition seeking to modify the alimony award by extending it beyond its May 2006 expiration date. Wife asserted unforeseen reduction in income and earning capacity due to back surgery and related complications. Following evidentiary hearing on February 10, 2006, Hearing Officer Patricia G. Miller Esquire mailed recommendations on February 15, 2006. Hearing Officer Miller recommended that Wife's petition be granted. The hearing officer found Wife's and Husband's net monthly incomes to be $1,855 and $5,064, respectively. Hearing Officer Miller recommended that, effective May 15, 2006, Husband be required to pay alimony of $1,370 per month, terminating upon Wife's attainment of the age of 66 on October 27, 2009.

Wife and Husband both filed exceptions. Following briefing and oral argument, this court disposed of the exceptions by order dated May 23, 2006. This court dismissed Husband's exceptions,[1] granted Wife's excep-

---

1. Husband's exceptions averred the following:

"(1) The learned hearing officer erred in entering an award of additional alimony in this case, generally, and in the particulars set forth below.

"(2) The learned hearing officer failed to apply the appropriate legal standard that requires a finding of change of circumstances of a 'significant and ongoing' nature, or, conversely, applied an incorrect legal standard in entering her award.

"(3) The hearing officer erred in finding an ongoing diminution in Wife's earning capacity in the absence of any evidence that such diminution continued beyond several months in 2005.

"(4) The hearing officer erred in her calculation of Wife's reasonable expenses in that she:

"(a) Failed to deduct a duplicative amount of $166 per month listed as 'credit card payment';

tion concerning inclusion of pension annuity income in her monthly income for alimony determination purposes, and dismissed Wife's exception seeking to impute rental income to Husband.[2] This court ordered that Wife's

---

"(b) Allowed Wife full credit for amounts spent for maintaining her residence in the former marital home, in spite of evidence that she lives alone in the four-bedroom house with five garages on site, indicating that such expenses are not 'reasonable.'

"(5) The hearing officer erred in calculating the income of Wife by:

"(a) Underestimating her earnings from her employment;

"(b) Not attributing any income which she is earning from assets which she received by equitable distribution;

"(c) In failing to attribute income to her from the possible rental of the five garages.

"(6) The hearing officer erred in extending the term of alimony beyond that earlier awarded by the Honorable Kevin Sasinoski of this court without legal justification for doing so.

"(7) The hearing officer erred in permitting Wife to succeed on an untimely and collateral attack on Judge Sasinoski's award."

2. Wife had argued that the hearing officer erred by failing to impute rental income to Husband, who had previously collected $2,500 per month from his business, and who had recently benefited from an arrangement whereby his son's business paid the mortgage loan encumbering the property which Husband owned. This court dismissed Wife's exception on this point.

As Husband suggested in his brief on exceptions, the issue lacked legal significance inasmuch as the hearing officer noted that Husband demonstrated his ability to meet his own needs while paying alimony at a rate even higher than the monthly amount recommended. Under the circumstances, Husband's income finding was of little consequence. It may be that Wife sought a finding as to a higher figure for Husband's net monthly income now to buttress any petition Wife might make in futuro for additional modification before age 66. Wife may be anticipating that her disability will worsen, and that she will need more alimony to meet her reasonable needs. If so, development of such "anticipatory evidence" is premature at best. At all events, it would have been speculative for the hearing officer to impute income to Husband

net monthly income be set at $1,337, and that, effective May 15, 2006, Husband pay alimony of $1,877 per month until Wife reaches age 66.

Husband filed a notice of appeal on June 22, 2006. Wife has not appealed. By order dated June 23, 2006, this court directed Husband to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Husband timely complied on July 5, 2006.

## HUSBAND'S MATTERS COMPLAINED OF ON APPEAL

In his Rule 1925 statement, Husband asserts the following claims:

"(1) The trial court applied the wrong legal standard in deciding this case, using a 'needs' standard, instead of the statutory standard of a 'significant and ongoing' change of circumstances.

"(2) Once it applied a 'needs' standard, the trial court erred in refusing to count toward Wife's resources her income from Husband's pension benefit awarded to her in equitable distribution.

"(3) The trial court erred in its determination of Wife's reasonable needs, and failed to account for all possible sources of income to Wife.

---

for his new business solely based upon income received from his old business.

Wife did not appeal this court's dismissal of this exception, so it is moot in any event.

"(4) The trial court's decision in this case amounts to an improper overruling of the order for equitable distribution and alimony originally entered in this case."

## DISCUSSION AND ANALYSIS

### *Appeal Issue No. 1: The Standard Applied*

Contrary to Husband's Rule 1925 averment, the court did not "us[e] a 'needs' standard, instead of the statutory standard of a 'significant and ongoing' change of circumstances."

Hearing Officer Miller properly determined that Wife demonstrated a significant and ongoing change in circumstances. This court approved the hearing officer's determination.

Wife credibly testified that her ability to work in her job as a nail and skin care technician has been reduced significantly since she underwent a laminectomy and fusion (with rods and screws) of her L3 through L5 vertebrae on February 9, 2005. (R. at 16-21.) As a result, Wife's 2005 income from nine months of work was $1,643 per month gross. (Hearing officer explanation, at 1.) The hearing officer annualized that income to calculate a $1,337 per month net income for Wife. By comparison, Wife's gross earnings for 2003 and 2004 were, respectively, $25,342 and $26,414. (R. at 16 and exhibits 3 and 4.)

The hearing officer properly found a significant and ongoing change in circumstances in light of Wife's ongoing inability to work full-time. Further, at $722 per month, Wife's medical expenses are much higher as a

result of her condition. Wife also testified that she now has to incur additional home maintenance expenses such as lawn care and shoveling of snow, at $93 per month. (R. at 25.) Wife did not have these expenses in 2001. The back problems developing after 2001 prevented her from doing these tasks herself.

Wife's testimony established that the 2005 surgery she had did not "cure" her. While it is true that Wife felt compelled to return to work on a part-time basis three months after her surgery, Wife testified credibly that she has been able to work only a limited number of hours and days per week because of the nerve damage she has sustained. (R. at 18-20, 28-29.) Wife has continuing problems with sensation, balance, mobility, and ambulation, because of neuropathy in her foot and because of the rod in her back. (R. at 18-19.)

On the developed record, the hearing officer properly found that Wife's disability has created a significant and ongoing change in circumstances.

### Appeal Issue No. 2: Treatment of Pension

This court correctly found that Hearing Officer Miller erred in including Wife's pension annuity, which was marital property, as income for alimony purposes. As a matter of black letter law, the hearing officer's recommendation constituted an impermissible "double dip." This court accordingly granted Wife's exception in this regard.

Hearing Officer Miller was correct that the threshold test for whether or not to award alimony pursuant to 23

Pa.C.S. §3701 is whether there is a reasonable need. However, it is impermissible to include income that a party is receiving from a marital asset that was awarded to her in equitable distribution in calculating the amount of alimony that she should receive. See *Berry v. Berry,* 898 A.2d 1100, 1104 (Pa. Super. 2006); *Miller v. Miller,* 783 A.2d 832, 835 (Pa. Super. 2001); *Rohrer v. Rohrer,* 715 A.2d 463, 465 (Pa. Super. 1998).

As Wife noted in briefing the exceptions and cross-exceptions, Hearing Officer Miller herself had astutely and presciently discerned and warned of the double-dip problem even before the Superior Court's rulings in *Berry, Miller* and *Rohrer.* See Patricia G. Miller, "Berrington, Cornbleth, and the Still-Unanswered Questions, as Well as Other Miscellaneous Related or Useful Pension Tidbits," at 6 *Equitable Distribution and Retirement Planning* (PBI 1997) (cited and discussed in Wife's brief, at 8-9). The essential point is that this court (per Judge Sasinoski) considered that Wife received this marital asset in arriving at the original alimony award of $2,000. Therefore, it would be improper as a matter of law effectively to add the income stream from this asset into Wife's available monthly income now to determine her alimony award.

Accordingly, Wife's monthly net income should be set at $1,337, which is her net income from her job. When Wife's income is subtracted from her reasonable needs of $3,214 per month, there is a shortfall of $1,877. That is the amount of alimony that Husband should pay, and this court so determined.

*Appeal Issue No. 3: Wife's Reasonable Needs and "Possible" Sources of Income*

In addition to the income and expense items already discussed hereinabove, Husband also made additional arguments on exceptions.

Husband asserted that Hearing Officer Miller erred in calculating Wife's reasonable expenses by failing to deduct an assertedly duplicative $166 per month item listed as "credit card payment" and by, according to Husband, allowing Wife full credit for amounts spent for maintaining her residence in the former marital home, in spite of evidence that she lives alone in the four-bedroom house with five garages on-site.

This court properly dismissed Husband's claims, which comprised his fourth exception.

As to the credit card payment issue, the hearing officer correctly allowed that item to remain on Wife's budget. Husband claimed that Wife's $166 credit card expense might be duplicating other items on Wife's budget, such as clothing and gasoline. However, Wife clarified on redirect examination that, in adding up her clothing and gas expenses, she was including items that she had paid for in cash or by check. (R. at 41-42.) Therefore, these items would not be duplicated as part of the $166 charged on Wife's credit cards.

As to the garage rental issue, Husband's counsel merely elicited from Wife that there are five garages on her property that were used by Husband for his business during the marriage. (R. at 44.) Husband's counsel did not try to establish what the rental income might be if Wife attempted to rent out the five garages. In fact, Wife

admitted that she had rented a garage to a friend a year or two ago, but Husband's counsel did not ask how much Wife charged. (R. at 44.) It would have been error for the hearing officer to speculate as to rental income Wife might receive if she chose to rent out garages. The record is entirely devoid of any competent evidence of record as to what the rental income might be.

Husband also argued that the hearing officer erred in calculating the income of Wife in several ways. This court dismissed this claim (which comprised Husband's fifth exception) as well.

For example, Husband asserted that the hearing officer underestimated Wife's earnings from her employment. This exception was properly dismissed. Husband argued that Wife's testimony that her tips amount to only 3 percent was not credible, and that the fact that Wife's reported tips are full dollar multiples of five is somehow evidence that Wife is underreporting. Husband offered only speculative argument on this point, rather than any supporting evidence. Wife testified credibly when she stated that most of her clients pay for services with gift certificates, and feel they do not have to tip her at all. (R. at 32.)

Husband also claimed error in the hearing officer's failure to attribute to Wife any income that Wife is earning from assets which she received by equitable distribution. If the hearing officer considered the assets that Wife was awarded in equitable distribution, then she observed that a large portion of Wife's award was tied up in the marital residence and in retirement accounts. Further, it is evident from the 2001 order that Judge Sasinoski determined that Wife's distributive share of the marital

estate alone was insufficient to sustain Wife, even when, unlike today, she was able to work full-time.[3]

*Appeal Issue No. 4: Husband's Claim That "This Case Amounts to an Improper Overruling of the Order for Equitable Distribution and Alimony Originally Entered in This Case"*

Husband has sought to characterize Wife's petition for modification (and this court's 2006 order on exceptions) as a "collateral attack" on, or an "improper overruling" of, the 2001 distributive order. But Husband errs. Like any recipient, Wife had a right to file a petition for modification under 23 Pa.C.S. §3701(e.) That is what Wife did. To argue or suggest that Wife is not permitted now to file a petition because she should (in 2001) have somehow anticipated her change of circumstances in 2005 and appealed Judge Sasinoski's order at that time defies not only logic but also the General Assembly's authorization of modification petitions in "changed circumstances . . . of a substantial and ongoing nature...." *Id.*[4]

For the foregoing reasons, this court's order of May 23, 2006 should be affirmed.

---

3. Husband also argued that the hearing officer erred in failing to attribute income to Wife from the possible rental of the five garages. This court already has addressed this item hereinabove.

4. In light of the General Assembly's express authorization of modification, any other result would amount, in the undersigned's judgment, to judicial nullification of 23 Pa.C.S. §3701(e). That is something the court may not do. Because an esteemed colleague on this court disagrees, the undersigned respectfully requests the Superior Court's precedential disposition of the issue.