J-A08027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DANIELA BURGUI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALBERT S. BURGUI | |
| Appellant | No. 1390 MDA 2014 |

Appeal from the Decree of July 16, 2014
In the Court of Common Pleas of Berks County
Civil Division at No.: 09-16199

BEFORE:  SHOGAN, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                              **FILED APRIL 10, 2015**

Albert S. Burgui ("Husband") appeals the July 16, 2014 divorce decree that made final the June 26, 2014 order that denied Husband's exceptions to the Master's recommended equitable distribution of the marital property between Husband and Daniela Burgui ("Wife").  After review, we affirm.

The trial court provided the following factual and procedural summary:

[Husband] and [Wife] were married on August 20, 1994, in Constanta, Romania.  The [p]arties have one child, [I.B., born in August 2000].  Wife filed a Complaint in Divorce [in Berks County] on December 8, 2009, requesting primary custody of the minor child, equitable distribution of all marital property, alimony and counsel fees/ costs/expenses.  The instant appeal concerns the equitable distribution of the parties' marital property and alimony and counsel fees.

_____

[*]      Retired Senior Judge assigned to the Superior Court.

After separation of the parties, Husband has remained the sole owner and operator of Beltrans, Ltd., a trucking business. Wife is a teacher with the Daniel Boone School District. [After hearings on May 20, 2013 and July 19, 2013,] Divorce Master [Louis M.] Shucker provided a detailed report and recommendation based upon his extensive attempts to resolve all outstanding economic issues. [The Master made a determination of Husband's income in which he rejected an approach that used depreciation of Beltrans' assets and instead, included a portion of Beltrans' retained income as part of Husband's income. The Master also determined the value of Beltrans' equipment in calculating the worth of the company. The Master recommended: an approximately equal division of the marital assets with Husband retaining the business and Wife retaining the marital residence, along with the associated mortgage and home equity loan; alimony to Wife in the amount of $500.00 per month for sixty months; and counsel fees to Wife in the amount of $7,500.00.] Husband filed exceptions to the Divorce Master's Recommendation and upon agreement of counsel submitted the case to [the trial court] to be decided on briefs and the record produced by Master Shucker. [The trial court] reviewed the transcript and report of Master Shucker as well as the documents and evidence submitted and entered an Order on [June 26, 2014,] denying Husband's Exceptions. . . .

Trial Court Opinion ("T.C.O."), 10/14/2014, at 1.

On July 16, 2014, the trial court entered the divorce decree, which included equitable distribution as proposed by the Master. On July 23, 2014, Husband filed a notice of appeal. The trial court ordered, and Husband timely filed, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Husband raises six issues for our review:

I.  Whether the trial court erred as a matter of law and abused its discretion by denying [Husband's] exceptions to the Divorce Master's report and recommendation and granting [Wife] five (5) years of alimony and in its assessment of [Husband's] income?

- 2 -

II.     Whether the trial court erred as a matter of law and abused its discretion by denying [Husband's] exceptions to the Divorce Master's report and recommendation and by awarding [Wife] seven thousand five hundred dollars ($7,500.00) in counsel fees?

III.    Whether the trial court erred as a matter of law and abused its discretion by denying [Husband's] exceptions to the Divorce Master's report and recommendation and by affirming the Divorce Master's conclusion that appraisals are inherently suspect inasmuch as they are often conducted by friends or family?

IV.     Whether the trial court erred as a matter of law and abused its discretion by denying [Husband's] exceptions to the Divorce Master's report and recommendation and by affirming the Divorce Master's computation of [Husband's] income and subsequent conclusion thereon?

V.      Whether the trial court erred as a matter of law and abused its discretion by denying [Husband's] exceptions to the Divorce Master's report and recommendation and in affirming the Divorce Master's recommendation, which calculated, computed and considered that depreciation is a part of [Husband's] income?

VI.     Whether the trial court erred as a matter of law and abused its discretion by denying [Husband's] exceptions to the Divorce Master's report and recommendation and in affirming the Divorce Master's recommendation, which considered [Husband's] retained earnings of 2010 as a portion of assets for distribution?

Husband's Brief at 2-3.

We review an equitable distribution order as follows:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless

the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record.

*Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009) (citations and quotation marks omitted). Similarly, we review challenges to an award of alimony and to an award of counsel fees for an abuse of discretion. *Gates v. Gates*, 933 A.2d 102, 106, 109 (Pa. Super. 2007). We also note that "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Childress v. Bogosian*, 12 A.3d 448, 455-56 (Pa. Super. 2011).

Because Husband challenges alimony and counsel fees and because the award of those forms of economic relief rely, in part, upon his income, we first address Husband's fourth and fifth claims of error because, in those claims, he challenges the determination of his income.

Husband disagrees with the Master's calculation of his income. First, Husband contends that the court erred by including retained earnings in his income determination. Husband argues that his testimony demonstrated that his company needed to retain those earnings to maintain his trucking business. Husband's Brief at 19-20. Husband contends that he provided ample testimony relating to the increase in business expenses and the need to purchase new equipment and hire additional employees. Husband asserts

- 4 -

that this testimony demonstrated that he was required to retain earnings to support the business. *Id.* at 13. Husband argues that the record does not support the finding that some of those earnings actually were available to Husband.

Husband also asserts that the trial court erred in considering depreciation as part of Husband's income. Husband claims that the Master erred in finding that the depreciation deduction on his corporate taxes was not warranted. Husband's Brief at 20. Husband also argues that there was no proof that Husband took the deduction in an attempt to reduce income for support or alimony. *Id.* at 21-22.

The Master considered that Husband's trucking company had retained income, which was defined as "accumulated profits, *i.e.*, the net sum of the corporation's yearly profits and losses." Master's Report and Recommendation ("Report"), 10/30/2013, at 18 (quoting *Rohrer v. Rohrer*, 715 A.2d 463 (Pa. Super. 1998)).[1] Reviewing case law, the Master determined that, because Husband had the ability to control the retention or distribution of funds, he had the burden to prove that retention was required to maintain the business. *Id.* at 19. The Master found that Husband failed to provide any evidence that the retained income was necessary to maintain

---

[1] The Report does not have numbered pages. We have supplied page numbers for ease of reference.

the trucking business. Therefore, the Master considered the retained income after separation as part of Husband's income. *Id.* at 20.

To determine Husband's income, the Master then considered that the trucking business had increased its retained income each year, from $29,161.00 in 2010 to $47,557.00 in 2012. Further, the entire amount of retained income available to the business increased from $109,269.00 in 2010 to $225,861.00 in 2012. *Id.* at 32. During the same period of time, sales increased from $250,000.00 to $873,000.00. *Id.* at 31. Based upon these numbers and Husband's failure to convince the Master that the entire amount was necessary to maintain the business, the Master credited $47,557.00 as income to Husband for 2012, increasing his income to a total of $95,114.00. In reaching this decision, the Master also considered that Husband would receive a tax benefit from any awarded alimony, which would reduce the actual effect on Husband's income. *Id.* at 32.

The trial court denied Husband's exception, finding that Husband's testimony provided no support for the proposition that the retained income was necessary to the survival of the business. Further, the trial court noted that Husband testified that some of his expenses, such as cell phones and meals, were paid directly from the business. Therefore, the trial court found that the record supported the Master's determinations of Husband's income. T.C.O. at 6.

We agree with the trial court. In *Rohrer*, this Court addressed whether retained earnings should be considered as income for support or as

- 6 -

an asset in equitable distribution. ***Rohrer***, 715 A.2d at 465. There, the trial court had ordered that the retained income should be used as income for the purpose of child support. The master included the retained earnings from the years prior to the support determination as an asset. ***Id.*** at 465. This Court affirmed the arrangement, holding that it was not an impermissible "double-dip," or counting the same asset as both property for distribution and income for support. ***Id.*** at 466. While not called to rule specifically upon the issue, the ***Rohrer*** Court did not comment negatively upon the trial court's use of the retained income as part of income.

We addressed the issue more directly in ***Fennell v. Fennell***, 753 A.2d 866 (Pa. Super. 2000). In that case, the trial court included retained earnings as part of the father's income for child support. ***Id.*** at 867. We recognized that, in determining income for support, a trial court must consider "all benefits flowing from corporate ownership" and "that the owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating . . . corporate distribution amounts." ***Id.*** at 868. However, in that case, the father was a minority shareholder who could not control the distribution of profits. Further, the retention of earnings was a long-standing practice in the corporation and the trial court specifically found that the retention was a business decision. Finding no evidence in the record of an intent to shield income, we reversed the trial court. ***Id.*** at 869.

Here, the Master followed a similar path as outlined in *Rohrer*. The Master considered retained earnings accumulated during the marriage as an asset, namely, part of the valuation of Beltrans. Report at 27-29. The Master considered the then-current retained earnings as part of Husband's income for alimony. *Id.* at 32. In following *Fennell*, the Master found the retained income should be counted as income. Unlike in *Fennel*, Husband had total control over distributions from the business, the business had increased its retained income only recently, thus there was no long-standing practice, and there was no evidence that the retained income was invested for business purposes or necessary to maintain the business.

The record supports the conclusions reached by the Master. Husband testified regarding his business expenses and that he obtained more equipment and hired employees in the year prior to the hearing. Notes of Testimony ("N.T."), 7/19/2013, at 82-84, 85-88. Husband also testified that he pays himself a salary sufficient to meet his needs and puts the rest of the profits back into the business. *Id.* at 98-100. Husband explained that he retains profits to pay unexpected expenses, including the $1000.00-per-incident deductible on his business insurance. *Id.* at 101-02. The Master, in making his credibility determinations, found that the retained earnings were not all necessary to maintain the business, despite Husband's testimony. Husband was unable to explain the need to retain twice as much income as he retained prior to separation. We defer to the Master's credibility determination and find no abuse of discretion.

- 8 -

As to the depreciation argument, the Master recognized that, at a support conference, Husband's income was determined by incorporating half of the claimed depreciation into his income. Report at 14. However, the Master rejected that method of calculation. *Id.* at 14-15. While the Master found that it was "not clear that all of the depreciation deduction claimed by Husband on his tax returns represent[s] the cost of acquiring new equipment," the Master decided to use retained income as an alternative method of determining Husband's income, as discussed above. *Id.* at 17. Because the Master did not consider depreciation in his calculation, Husband's issue relating to depreciation is without merit.

We turn next to Husband's challenge to the court's alimony award. Husband asserts that, given the circumstances of the case, Wife should not have been awarded alimony. Husband contends that the factors did not weigh in favor of alimony as Wife has a college degree, gainful employment, employment benefits, and the opportunity for raises. Husband also argues that, because Wife testified that her income is sufficient to meet her needs and because alimony is only available to meet one's reasonable needs, Wife should not have been awarded alimony. Finally, Husband asserts that the Master erred in concluding that Wife has understated her expenses and reasonable needs. Husband's Brief at 7-11.

> [A]limony provides a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution. An award of alimony should be made to either party only if the trial court finds that it is necessary to provide the receiving spouse

- 9 -

with sufficient income to obtain the necessities of life. The purpose of alimony is not to reward one party and punish the other, but rather to ensure that the reasonable needs of the person who is unable to support herself through appropriate employment are met.

Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.

***Balicki v. Balicki***, 4 A.3d 654, 659 (Pa. Super. 2010) (citations and quotation marks omitted). In granting alimony, the trial court must consider the seventeen factors set forth in 23 Pa.C.S.A. § 3701(b).

The Master engaged in a detailed discussion of the seventeen factors. Report at 30-38. The Master found that Wife, as a school teacher, was likely to receive wage increases, but that there was no certainty about the amount or timing of those raises. *Id.* at 31. The Master determined that Husband's company had more than doubled its sales since the parties' separation, and that Husband, as sole owner, had the ability to retain earnings or distribute earnings to himself. Given the record, the Master concluded that Husband was retaining more earnings in the company than necessary and included a portion of those retained earnings as income for Husband. Therefore, the Master calculated Husband's income as approximately twice that of Wife's income. *Id.* at 31-32.

The Master credited Wife's testimony that she had contributed to Husband's business by handling paperwork, dealing with customers, and negotiating contracts and that Husband had not supported Wife's efforts to obtain her teaching certificate in the United States. *Id.* at 33. Also, Wife

maintained the home and provided the majority of childcare, which allowed Husband to be on the road to develop the trucking company. *Id.* at 34, 35-36.

The Master found that Wife had underestimated her expenses. Wife's expense statement indicated that Wife's income was greater than her expenses. However, Wife neglected to include any expenses for food, clothing, car repair, school lunches, child care, or legal fees. The Master found that, correcting for this oversight and the fact that Wife would no longer be eligible for a mortgage deviation once the divorce became final, Wife's income would not meet her reasonable expenses. *Id.* at 36-37. Conversely, the Master found that Husband had overinflated his expenses and that his income, especially with the inclusion of the retained earnings, was more than adequate to provide for his reasonable needs. *Id.* at 36.

The Master found that Wife had limited savings and would be receiving the marital residence, which had an associated mortgage and home equity loan. The Master determined that alimony would allow Wife to remain in the marital residence and maintain the standard of living the parties had attained during their marriage. *Id.* at 38. The Master concluded that Wife's income alone would not meet her monthly reasonable needs, especially once Wife was responsible for the entire mortgage payment, and that the factors weighed in favor of an award of alimony. The Master found it important for Wife to maintain the marital residence to provide stability for I.B. *Id.* at 39.

The trial court concurred, finding that that record supported the Master's findings and the award of alimony. T.C.O. at 4.

We agree. Wife testified that the line of credit on the marital residence was started to allow Husband to purchase a truck for his business, that he continued to take small amounts from the line after separation, and that she would be responsible for that payment after the divorce became final. N.T., 5/20/2013, at 38-39, 41. Wife also testified that alimony would help her meet her monthly obligations. *Id.* at 64. On cross-examination, Husband's attorney questioned Wife about her failure to include food, clothing, car insurance, and other personal expenses. N.T., 7/19/2013, at 19-21. While Wife testified that these expenses are small, there is no doubt that her expense statement was incomplete. Further, Husband testified that he was not sure if Wife would be able to maintain the marital residence on her salary alone. *Id.* at 135-37. Given that Wife's income does not cover her reasonable needs and that Husband has a higher income, we find no abuse of discretion in the Master's award of alimony or the trial court's denial of Husband's exception.

Husband next contends that the Master erred in awarding counsel fees to Wife. Husband argues that the Master misapplied the law and failed to consider the property awarded to Wife or the value of the attorney's services rendered in determining whether attorney's fees were warranted. Husband also asserts that the evidence did not support the trial court's conclusion that Husband prolonged the litigation. Husband's Brief at 14-17.

> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.
>
> Counsel fees are awarded only upon a showing of need. In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate.

***Busse v. Busse***, 921 A.2d 1248, 1258 (Pa. Super. 2007) (citations and quotations marks omitted).

The Master found that Wife did not receive alimony *pendente lite* ("APL") during the course of litigation because the retained earnings were not considered as part of Husband's income at the time APL was decided. The Master also concluded that the debt that Wife carried due to her counsel fees would affect significantly her ability to meet her reasonable needs. Report at 41. Wife incurred approximately $35,000.00 in total counsel fees for the divorce and related litigation. The Master apportioned $15,000.00 of that amount to the divorce litigation. ***Id.*** at 37.

As noted above, Husband's income is greater than Wife's. The vast majority of what Wife received in equitable distribution is the marital residence, which is not a liquid asset. In contrast, Husband received his business, which has a significant amount of retained earnings. The Master noted that Wife included neither her legal expenses nor the credit cards she used to finance her legal fees as part of the expenses statements that Wife submitted for her alimony claim. ***Id.*** at 37.

The parties' financial circumstances largely dictate the award of counsel fees. **Busse**, *supra*. Even with alimony, Husband is in a better financial position than Wife. Given this record, there was no abuse of discretion in the imposition of an award of $7,500.00 in counsel fees.

Husband next contests the Master's consideration of appraisals of Beltran equipment. Husband argues that the Master's statement that "appraisal are inherently suspect" was in error. Husband's Brief at 18. Husband asserts that he obtained independent appraisals while Wife researched the value of the vehicles. Husband argues that the Master erred in not using his valuations of the vehicles. Husband's Brief at 19-20.

As part of his determination of the value of Beltrans, the Master assigned a value to the business' trucks and trailers. Wife provided values based upon an internet search of similar vehicles and provided a total value of $78,550.00. Husband provided appraisals with a total value of $44,300.00. As a compromise, the Master valued the vehicles at $50,000, "electing to honor the appraisals done for Husband but taking into account a possible 'discount.'" Report at 10.

> A fact-finder need not accept even the uncontradicted opinion of a valuation expert, although the fact-finder should offer some explanation of the basis on which it sets value where that value varies from the only value given in evidence.

**Gaydos v. Gaydos**, 693 A.2d 1368, 1377 (Pa. Super. 1997). Here, the Master had two potential values. Neither party chose to have the business as a whole valued by an expert. Instead, they submitted values for the

trucks and trailers owned by the business. The fact that the Master chose to use neither Husband's nor Wife's submitted value, but to find a value between the two, is within his purview as the fact-finder. The Master provided a rationale for his valuation, namely that he found that Husband's estimate undervalued the company's vehicles. While we do not condone the Master's statement regarding the inherent unreliability of appraisals, and it was unnecessary to the resolution of the issue, the Master's determination of the value of the equipment was reasonable and was based upon the evidence presented. Therefore, we find no abuse of discretion.

Finally, Husband argues that the Master erred by considering the retained earnings of the business as both an asset to be divided in equitable distribution and as income for the purposes of awarding alimony. Husband's Brief at 22-23.

The Master included the retained earnings accumulated during the marriage as part of the value of Beltrans for equitable distribution. The Master considered only at the retained earnings until December 2009, the date of separation. The Master discounted the earnings for the part of the year that the parties were separated and because, should the business be sold, the retained earnings would be not received on a dollar-for-dollar basis. Therefore, the Master concluded the business should be valued based upon $50,000.00 worth of equipment and $66,727.00 in retained earnings. Reports at 28-29.

For the purposes of alimony, as noted above, the Master found that Husband could have distributed additional earnings to himself as income without harming the business. Therefore, for 2012, the Master found Husband's income to be higher than reported by Husband to reflect more accurately the amount of income available to Husband. While the Master used retained earnings as both an asset and income, it was for different periods of time and there was no impermissible double dipping.

As noted above, this approach was similar to that used by the trial court in **Rohrer**. There, the trial court ordered that the retained earnings were to be used as income for support. 715 A.2d at 464. However, the master included the pre-date of separation retained income in the value of the husband's business. **Id.** at 465. While recognizing that "double-dipping" was impermissible, we found this approach not to be a double-dip because it involved two separate amounts of revenue. We condoned this practice because it permitted "monies accumulated during the marriage to be equitably divided." **Id.** at 466. The Master here used a similar rationale. The retained earnings accumulated during the marriage were included in the value of Husband's business to be divided in equitable distribution. The retained earnings going forward were counted as income for the purpose of determining whether alimony was warranted. We find no abuse of discretion.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2015