In re the Marriage of Loretta Marie
ANGELL, Respondent,

v.

Gordon William ANGELL,
Jr., Appellant.

No. A09–349.

Supreme Court of Minnesota.

Dec. 9, 2010.

Peter L. Radosevich, Esko, MN, for appellant.

Arthur M. Albertson, Duluth, MN, for respondent.

Mary Catherine Lauhead, Law Offices of Mary Catherine Lauhead, St. Paul, MN, Michael D. Dittberner, Linder, Dittberner & Bryant, Ltd., Edina, MN, for amicus curiae Family Law Section, Minnesota State Bar Association.

## OPINION

GILDEA, Chief Justice.

The question in this case is whether federal law preempts the district court's award of death benefits to a non-beneficiary spouse. The court of appeals held that the award of federal death benefits to the non-beneficiary spouse conflicted with federal law. Because we hold that the anti-attachment provisions in 38 U.S.C. § 1970(g) (2006) and 38 U.S.C. § 5301(a)(1) (2006) preempt the court's award made under state law, we affirm.

This action arises from the dissolution of the marriage between appellant Gordon William Angell, Jr. (appellant), and respondent Loretta Marie Angell (respondent). Appellant and respondent married in 1981. They had five children together. During the marriage, respondent worked part-time as a substitute rural postal carrier, earning approximately $1,100 a month. Respondent generally handled the finances and paid the bills.

One of the parties' children, Levi Angell, enlisted in the Marines in 2002 when he turned 18. Levi Angell died in active combat in Iraq in 2004. He was insured under the federal Servicemembers' Group Life Insurance program (SGLI), which is authorized by 38 U.S.C. §§ 1965–80A (2006) and regulated under 38 C.F.R. Pt. 9 (2010). Levi listed only his mother, the respon-

dent, as a beneficiary on the SGLI policy election form. Levi also designated only respondent as the sole beneficiary of his death gratuity benefits, which are authorized by 10 U.S.C. § 1475 (2000), and allow payments from the federal government to designated survivors of servicemembers killed in combat.

Immediately following her son's death in April 2004, respondent received death gratuity payments totaling $100,000. Respondent also received a payment of $250,352.66 in May 2004 because of her status as the sole beneficiary under her son's SGLI plan. Respondent received an additional $150,000 from the federal government in 2005 under a program that provided additional payouts to prior SGLI beneficiaries. In total, respondent received $500,352.66 in federal death benefits because of her son's death.[1]

All of the federal death benefit checks were made out solely to respondent or deposited directly into an account on her behalf. Appellant did not ask respondent for a share of the federal death benefits, other than $500 to buy clothes for his son's funeral. Respondent spent approximately $133,000 on gifts to her surviving adult children and on a family trip. At some point before the marriage dissolution proceedings were commenced, respondent moved most of the remaining federal death benefits into a bank account in another state. An adult daughter of respondent and appellant was designated the primary owner of that account.

Appellant moved out of the family home and moved in with his elderly mother in July 2006. Appellant had no bank or checking account, additional real property other than the homestead, retirement savings, or assets other than one car. He had a seventh-grade education, no job or voca-tional training, and has not held a full-time job since 2002. He has a disability that requires him to speak with a device and his primary source of income was a $424 monthly social security disability payment. Appellant's living expenses were about $600 a month.

Respondent filed for marriage dissolution on January 29, 2007. Sometime before the proceedings were commenced, respondent went on disability leave from her job. At the time of the marriage dissolution, she received $203 a month in General Assistance and additional supplemental social security disability benefits. Her monthly living expenses at the time were approximately $2,172.

Respondent and appellant came to several agreements during the proceedings. Specifically, the parties agreed that respondent would get sole physical and legal custody of their then-minor son. Appellant and respondent also agreed that respondent would keep a nonmarital parcel of unimproved land that respondent inherited during their marriage, that they would divide the household goods, furnishings, cars, and other personal property before trial, and that they would sell their home and split the proceeds equally. Appellant and respondent also stipulated that "no spousal maintenance should be awarded to either party."

The only issue for trial, according to the district court, was the proper characterization and division of the federal death benefits. After trial, the court found the parties' stipulations "to be reasonable" and incorporated them into its judgment and decree. As to the federal death benefits, the court determined that the death gratuity payments were marital property, and the court divided them evenly between the

---

**1.** We refer to the proceeds from the federal death gratuity program and the SGLI program collectively as the "federal death benefits."

parties. The court further determined that the SGLI payouts were respondent's nonmarital property. The court then determined that appellant was entitled to $100,000 from respondent's nonmarital assets to prevent an unfair hardship, as authorized by Minn.Stat. § 518.58, subd. 2 (2008).[2] Appellant's total award therefore was $150,000.

Respondent filed a post-trial motion to amend the judgment and decree, asserting that because she was the sole named beneficiary of the death gratuity benefits, those benefits were solely her nonmarital property. Respondent also asserted that federal law barred the district court from distributing any portion of either the death gratuity benefits or the SGLI proceeds to appellant because the payments were "within the exclusive jurisdiction of the federal government." Respondent asked the court to amend the judgment and decree to remove the $150,000 award to appellant, or alternatively, to order a new trial.

The district court amended the judgment and decree to designate all of the federal death benefits as respondent's nonmarital property. The court then increased its award to appellant from respondent's nonmarital property under the section 518.58, subdivision 2, "unfair hardship" provision to $150,000, leaving appellant with the same $150,000 award that the court originally ordered. The court denied the remainder of respondent's motions.

Respondent appealed to the court of appeals. Respondent asserted on appeal that the district court erred by awarding appellant any share of her nonmarital property or, alternatively, that the court erred by increasing the share of the award of her nonmarital property from $100,000 to $150,000. *Angell v. Angell,* 777 N.W.2d 32, 35 (Minn.App.2009). Appellant in turn challenged the reclassification of the death gratuity benefits as nonmarital property. *Id.*

The court of appeals first determined that the district court did not err by designating all of the federal death benefits as nonmarital property. *Id.* at 37. The court determined that Levi's designation of respondent as the sole beneficiary of his federal death benefits provided enough evidence to overcome the state law presumption that because the federal death benefits were received during the marriage, they were marital property. *Id.* at 36.

The court of appeals then turned to the issue of whether the property division was proper. *Id.* at 37. The court determined that based on appellant's financial and medical circumstances, the award under the section 518.58, subdivision 2, unfair hardship provision "accord[ed] with the statute's hardship concerns." *Angell,* 777 N.W.2d at 38. But the court also found that the district court's order awarding appellant a share of the federal death benefits directly conflicted with the express prohibition under federal law barring the diversion of military death benefits from designated beneficiaries of those benefits. *Id.* at 40. The court reversed solely on the latter issue and remanded the case to the district court to make a property distribution consistent with its holding. *Id.* at 41. We granted appellant's petition for review.[3]

---

**2.** This statute provides: "If the court finds that either spouse's resources or property ... are so inadequate as to work an unfair hardship, considering all relevant circumstances, the court may, in addition to the marital property, apportion up to one-half of the property otherwise excluded ... to prevent the unfair hardship." Minn.Stat. § 518.58, subd. 2.

**3.** Appellant made three arguments in support of his petition: (1) that the court of appeals

## I.

It is well settled that "[a] trial court has broad discretion in evaluating and dividing property in a marital dissolution and will not be overturned except for abuse of discretion." *Antone v. Antone,* 645 N.W.2d 96, 100 (Minn.2002). But we review de novo the question of whether federal law preempts state law. *In re Estate of Barg,* 752 N.W.2d 52, 63 (Minn. 2008).

Under the Supremacy Clause of the U.S. Constitution, a federal law prevails over a conflicting state law. U.S. Const. art. VI, cl. 2 (stating that the laws of the United States "shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding"). Congressional purpose is " 'the ultimate touchstone' " of the inquiry into whether a federal statute preempts a state law. *Barg,* 752 N.W.2d at 63 (quoting *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978)). And when considering issues arising under the Supremacy Clause, we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Divorce and other family law matters are traditionally within the historic police power of the states. *See Langston v. Wilson*

*McShane Corp.,* 776 N.W.2d 684, 689 (Minn.2009) (citing *Ankenbrandt v. Richards,* 504 U.S. 689, 703–04, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992)).

Appellant relies on the traditional role of state courts in the marital dissolution area in arguing that federal law does not preempt the district court's order. Respondent argues, and the court of appeals held, that two federal anti-attachments statutes operated to preempt the district court's assignment of any portion of the federal death benefits to appellant. *Angell,* 777 N.W.2d at 40. First, 38 U.S.C. § 1970(g) (2006), which governs the SGLI proceeds, states in relevant part:

> *Any payments due or to become due under Servicemembers' Group Life Insurance* or Veterans' Group Life Insurance *made to,* or on account of, an insured or *a beneficiary* shall be exempt from taxation, shall be exempt from the claims of creditors, and *shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.*

(Emphasis added.) Second, 38 U.S.C. § 5301(a)(1) (2006), which governs (among other veterans' benefits) the death gratuity benefits, states:

> *Payments of benefits due or to become due under any law administered by the Secretary* shall not be assignable except to the extent specifically authorized by law, and such payments *made to,* or on account of, *a beneficiary* shall be exempt

erred by failing to consider whether appellant was an intended beneficiary of the death benefits; (2) that the court of appeals erred by characterizing the death benefits as a nonmarital "gift;" and (3) that the courts of appeals erred by determining that federal anti-attachment statutes preempted the district court's award. Appellant briefed only the third issue to this court. Accordingly, we do not reach the other issues raised in his peti-

tion. *See Peterson v. BASF Corp.,* 711 N.W.2d 470, 482 (Minn.2006) ("It is well-established that failure to address an issue in brief constitutes waiver of that issue."). For her part, respondent contends that appellant waived his claim to the federal death benefits by waiving spousal maintenance. Because the preemption issue is dispositive, we do not reach this argument.

from taxation, shall be exempt from the claim of creditors, and *shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.*

(Emphasis added.) The question presented in this case is whether, notwithstanding the historic role the states have played in the area of domestic relations, either of these provisions of federal law preempts the district court's award of a portion of the federal death benefits to appellant.

### A.

■ Federal law may preempt state law in several ways. *Barg*, 752 N.W.2d at 63 (citing *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987)). First, Congress may preempt state law "with express language preempting state law." *Id.* Second, Congress may preempt state law by enacting a "scheme of federal regulation [that] is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Id.* (quoting *Guerra*, 479 U.S. at 280–81, 107 S.Ct. 683). Third, preemption may exist "when state law actually conflicts with federal law." *In re Qwest's Wholesale Serv. Quality Standards*, 702 N.W.2d 246, 251 (Minn.2005). This case concerns the third kind of preemption, sometimes called conflict preemption.

■ A state law conflicts with a federal law when "it is impossible for a private party to comply with both state and federal requirements" or when the "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (citations omitted) (internal quotation marks

omitted). Under this standard, a "state divorce decree, like other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal enactments." *Ridgway v. Ridgway*, 454 U.S. 46, 55, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981).

■ We conclude that the district court's award of a portion of the federal death benefits to appellant interferes with the congressional objective expressed in the federal anti-attachment statutes. In these statutes, Congress made clear—through the exemption of the federal death benefits from "any legal or equitable process whatever"—that these benefits belong only to the beneficiary. 38 U.S.C. §§ 1970(g), 5301(a)(1). But the court's award requires that respondent pay over to appellant a portion of the federal death benefits. Because the court's award of the federal death benefits to appellant conflicts with 38 U.S.C. §§ 1970(g) and 5301(a)(1), it cannot stand.

The Supreme Court's decision in *Ridgway* supports our conclusion. 454 U.S. at 60–61, 102 S.Ct. 49. In *Ridgway*, the Court held that a federal anti-attachment statute applicable to the SGLI program, identical in all relevant respects to section 1970(g), preempted the imposition of a state law constructive trust on the proceeds of a servicemember's life insurance proceeds. 454 U.S. at 60–61, 102 S.Ct. 49. The servicemember directed that the proceeds of the life insurance policy be paid as specified by law. *Id.* at 48, 102 S.Ct. 49. The statutory scheme designated his second wife as the sole beneficiary. *Id.* at 48–49, 102 S.Ct. 49. The servicemember's first wife sued his second wife seeking an order requiring that the proceeds of the insurance policy be used to support the children from the servicemember's first marriage. *Id.* at 49, 102 S.Ct. 49. The state supreme court issued an order di-

recting that the funds be held in trust for support of the children. *Id.* at 49–50, 102 S.Ct. 49. The Supreme Court reversed, holding that the constructive trust conflicted with the federal statute. *Id.* at 61, 102 S.Ct. 49.

The Supreme Court in *Ridgway* determined that Congress's purpose for enacting anti-attachment statutes was to ensure that benefits remain the sole property of the beneficiary. *Id.* at 56, 102 S.Ct. 49. Emphasizing that anti-attachment provisions are "strong language" that have an "unqualified sweep," the Court held that state action attaching or diverting benefits subject to anti-attachment laws from the intended beneficiary conclusively conflicts with this congressional purpose. *Id.* at 61–62, 102 S.Ct. 49; *see also Hisquierdo v. Hisquierdo,* 439 U.S. 572, 584, 586, 594–95, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (stating that anti-attachment language in general "pre-empts all state law that stands in its way" and holding that anti-attachment language prohibits state courts from awarding federal benefits to a non-beneficiary spouse in a divorce action in spite of the Court's reluctance to impact domestic matters traditionally within the discretion of the states); *Wissner v. Wissner,* 338 U.S. 655, 659, 70 S.Ct. 398, 94 L.Ed. 424 (1950) (holding that state action diverting benefits after they have been paid out to the intended beneficiary is in "flat conflict" with anti-attachment provisions).

### B.

Despite this strong precedent, appellant asserts that 38 U.S.C. § 1970(g) and 38 U.S.C. § 5301(a)(1) did not prohibit the district court's award of the SGLI proceeds and death gratuity benefits to prevent an unfair hardship to appellant under Minn.Stat. § 518.58, subd. 2. First, appellant argues that by their plain terms, the anti-attachment statutes do not apply to the district court's award. Second, he argues that the statutes do not operate to preempt the district court's award because the award was in the nature of a support obligation. We address each argument in turn.

1.

As a matter of statutory construction, appellant argues that the anti-attachment statutes do not apply to him because he is not a creditor and because the district court's award was not an "attachment, levy, or seizure" as expressly prohibited by the statutes. As to the first point, the Supreme Court has recognized that the sweep of the anti-attachment statutes is broad and that the statutes "make no exception for a spouse." *Hisquierdo,* 439 U.S. at 586, 99 S.Ct. 802. The fact that appellant is not a creditor therefore does not render the federal statutes inapplicable.

As to appellant's second statutory point, when the district court made the award, it invoked its authority under section 518.58, subdivision 2 to "*apportion* up to one-half of the *property* to the other spouse." (Emphasis added.) In its findings, the court specifically described the federal death benefits, designated those benefits as nonmarital property, took a portion of that nonmarital property, and gave that portion to appellant. Therefore the court "attach[ed], lev[ied], or seiz[ed]" precisely those benefits when it awarded them to appellant. *See* 38 U.S.C. §§ 1970(g), 5301(a)(1); *cf. Ridgway,* 454 U.S. at 60, 102 S.Ct. 49 ("Any diversion of the proceeds of Sergeant Ridgway's SGLIA policy by means of a court-imposed constructive trust would … operate as a forbidden 'seizure' of those proceeds."); *Wissner,* 338 U.S. at 659, 70 S.Ct. 398 (noting that a state court order that diverted payments from the beneficiary was "in effect" a sei-

zure of those funds). In short, appellant's statutory arguments are without merit.

2.

■ In addition to his arguments based on the language of the anti-attachment statutes, appellant also argues that the statutes do not preempt the district court's award because the award was in the nature of a support obligation. Appellant relies on *Wissner* and *Rose v. Rose*, 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987), to support his argument, contending that in these cases the Supreme Court has indicated it would be appropriate for an exception to anti-attachment statutes to apply in cases involving "support obligations."

In *Wissner*, Army Major Wissner named his mother and father as the beneficiaries of his federal National Service Life Insurance policy, deliberately excluding his estranged wife. 338 U.S. at 657, 70 S.Ct. 398. Upon Wissner's death, Wissner's widow claimed one-half of the life insurance proceeds under California's community property laws. *Id.* The Supreme Court reversed the state court's award of one-half of the proceeds to Wissner's widow, determining that "Congress ha[d] spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other." *Id.* at 658, 70 S.Ct. 398. Congress did this when it included language in the governing statute that the policyholder "shall have the right to designate the beneficiary or beneficiaries" and that "[n]o person shall have a vested right" to the proceeds. *Id.* at 658, 661, 70 S.Ct. 398 (citations omitted) (internal quotation marks omitted). The *Wissner* Court noted, however, that it would be less likely to find that an award from a veteran's benefits was prohibited by federal statutes in cases implicating the "moral obligation of supporting spouse and children." *Id.* at 660, 70 S.Ct. 398. The Court distinguished

this "moral obligation" implicated by "alimony and support cases" from "the business relationship of man and wife for their mutual monetary profit" implicated by property division cases. *Id.*

In *Rose*, a state court ordered the appellant, a disabled veteran, to pay child support. 481 U.S. at 622, 107 S.Ct. 2029. The appellant's only sources of income were federal social security and veterans' disability benefits which were subject to an anti-attachment provision similar to those at issue in this case. *Id.* at 622, 630, 107 S.Ct. 2029 (concluding that veterans' disability benefits were not liable to attachment under the anti-attachment provision). The Supreme Court analyzed whether the state court's child support award from those benefits conflicted with the federal anti-attachment provision. *Id.* at 630, 107 S.Ct. 2029. The Court determined that "Congress clearly intended veterans' disability benefits to be used, in part, for the support of veterans' dependents." *Id.* at 631, 107 S.Ct. 2029. On this basis, and invoking the "moral obligation" concepts from *Wissner*, the Court held that the child support award from the appellant's veterans' benefits did not conflict with the federal anti-attachment provision because the award was consistent with Congress's intent for veterans' disability benefits to be used for the support of the veteran *and* his dependents. *Id.* at 632, 636, 107 S.Ct. 2029.

Appellant contends that the section 518.58, subdivision 2, unfair hardship provision reflects the same "deeply rooted moral responsibilit[y]" policy rationale as the child support obligation at issue in *Rose*, and distinguishes the unfair hardship award from the "business relationship" nature of a typical property division award. *Rose*, 481 U.S. at 632, 107 S.Ct. 2029. Appellant argues that even though the district court awarded him a portion of

the federal death benefits pursuant to a property division order in this case, it did not necessarily "mean the Court's action [was] a property division." Appellant claims that the equitable nature of the unfair hardship provision takes the district court's order out of the realm of "property divisions" and into the realm of "support obligations" held not to be preempted by anti-attachment provisions under the rule in *Rose*.

Appellant's argument fails because the exception to anti-attachment provisions set forth in *Rose* does not apply to this case. *Rose* concerned different benefits with different congressional purposes, and the Court has drawn "a distinction between programs that are intended for the beneficiary alone and those that are intended to support the beneficiary and others." *Dep't of Pub. Aid ex rel. Lozada v. Rivera*, 324 Ill.App.3d 476, 258 Ill.Dec. 165, 755 N.E.2d 548, 553 (2001). In *Rose*, the Court determined that Congress intended for veterans' disability benefits to be used for the support of the veteran *and* the veteran's dependents; and that as a result, a state court's order directing a veteran to use his disability benefits to pay child support did not conflict with the anti-attachment statutes' purpose to ensure benefits remain

the property of the intended beneficiary. 481 U.S. at 636, 107 S.Ct. 2029.

■ This case, in contrast, concerns life insurance and death gratuity benefits. As the Supreme Court stated in *Ridgway*, a servicemember has "an absolute right to designate the policy beneficiary. That right is personal to the servicemember alone. It is not a shared asset subject to the interests of another." 454 U.S. at 59–60, 102 S.Ct. 49. Respondent was the only named beneficiary of the federal death benefits in this case. Therefore, an order diverting the benefits to anyone other than respondent—even her dependents—stands in direct conflict with Congress's clearly expressed intent.

Moreover, the apportionment made under section 518.58, subdivision 2, is not the same kind of "support obligation" as the obligation to pay child support at issue in *Rose*. Federal and state case law draw a clear distinction between awards of federal benefits in property division cases—which are held to be preempted by anti-attachment provisions—and awards of federal benefits in child and spousal support orders—which are held to be exempt from the preemptive effect of anti-attachment provisions.[4] The district court's award in

4. *Compare Hisquierdo*, 439 U.S. at 590, 99 S.Ct. 802 (holding that an award of federal railroad retirement benefits to ex-spouse in property division action conflicted with anti-attachment provision), *Wissner*, 338 U.S. at 658–59, 70 S.Ct. 398 (holding that an award of deceased veteran's federal life insurance benefits taken from the intended beneficiary and given to ex-spouse conflicted with anti-attachment provision), *In re Marriage of Crook*, 211 Ill.2d 437, 286 Ill.Dec. 141, 813 N.E.2d 198, 206 (2004) (holding that anti-attachment provisions conflicted with trial court's order dividing spouse's federal social security benefits in a property division action), *In re Marriage of Wojcik*, 362 Ill.App.3d 144, 297 Ill.Dec. 795, 838 N.E.2d 282, 295 (2005) (holding that on award of veteran's disability benefits to ex-spouse in property

division and spousal support action conflicted with anti-attachment provision), *and Young v. Young*, 931 So.2d 541, 548 (La.Ct.App.2006) (holding that a trial court was forbidden by anti-attachment statutes from including federal social security disability benefits in computation of distribution of marital property), *with Rose*, 481 U.S. at 636, 107 S.Ct. 2029 (holding that court order requiring veteran to use federal disability payments to cover child support obligations did not conflict with anti-attachment provisions), *In re Marriage of Anderson*, 522 N.W.2d 99, 102 (Iowa Ct.App. 1994) (holding that anti-attachment provisions did not preclude trial court from ordering veteran spouse to use federal disability benefits to pay alimony), *and Schwagel v. Ward*, No. A06–1812, 2007 WL 2600747, at *2

this case was a division of property, not an award of support, and therefore falls in the class of cases subject to the preemptive effect of anti-attachment provisions.

The language of Minn.Stat. § 518.58, subd. 2, confirms this result. The plain terms of subdivision 2 authorize the district court to "apportion" up to one-half of a spouse's nonmarital property in the same manner that it "apportions" the marital property. The Minnesota Legislature has, in contrast, separately provided for the support of a spouse under the spousal maintenance statute. *See* Minn.Stat. § 518.552 (2008). The term "maintenance" is defined as "an award made in a dissolution or legal separation proceeding of payments from the future income or earnings of one spouse for the *support* and maintenance of the other." Minn.Stat. § 518.003, subd. 3a (2008) (emphasis added). By enacting the spousal maintenance provision, the Legislature provided the means and circumstances under which a district court orders a spouse to "support" another.

The district court's order in accordance with section 518.58, subdivision 2, also supports the conclusion that the award was a division of property and not an award of spousal support. The district court first characterized the sole issue at trial as the "*division of certain money which was received upon the death of the parties' son.*" (Emphasis added.) Then the court invoked its authority under section 518.58, subdivision 2, to "apportion up to one-half of the *property* to the other spouse." (Emphasis added.)

In summary, by enacting the anti-attachment provisions, "'Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other.'" *Ridgway,* 454 U.S. at 55, 102 S.Ct. 49 (quoting *Wissner,* 338

(Minn.App. Sept. 11, 2007) (holding that anti-attachment provisions did not prevent trial

U.S. at 658, 70 S.Ct. 398). We hold that federal law preempts the award of a portion of the federal death benefits to appellant under state law.

Affirmed.

court from ordering veteran to use federal disability payments to cover child support).