# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| JOHANNA L. GOODWIN, | : | No. 70 MAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 2338 EDA |
| | : | 2019 dated December 14, 2020, |
| v. | : | reargument denied February 17, |
| | : | 2021, affirming the order of the |
| | : | Bucks County Court of Common |
| SCOTT M. GOODWIN, | : | Pleas, Family Division, at No. |
| | : | 2008-63956-DQRY-40 dated |
| Appellant | : | July 22, 2019. |
| | : | |
| | : | ARGUED: March 9, 2022 |

## OPINION

**JUSTICE BROBSON**                                  **DECIDED: August 16, 2022**

Pursuant to Section 3501(a)(3) of Pennsylvania's Divorce Code, 23 Pa. C.S. § 3501(a)(3), "[p]roperty acquired by gift, except between spouses, bequest, devise or descent or property acquired in exchange for such property" is not considered marital property subject to equitable distribution between divorcing parties. In this discretionary appeal, we must determine whether certain life insurance and individual retirement account (IRA) proceeds that Johanna L. Goodwin (Wife) acquired as sole beneficiary prior to the dissolution of her marriage to Scott M. Goodwin (Husband) fall within the purview of Section 3501(a)(3). We hold that, under the circumstances presented herein, such proceeds constitute "gifts" as the term is used in Section 3501(a)(3), and, thus, they are excluded from the marital estate for equitable distribution purposes. Because the Superior Court reached the same conclusion, we affirm the judgment of that court.

## I. BACKGROUND

The relevant facts and procedural history underlying this matter are as follows. Husband and Wife married on March 31, 1990. At the time, Wife had a three-year-old son, Nicholas Campellone (Son), from a previous relationship. No children were born to the marriage between Husband and Wife, and, while Son lived with the parties, Husband never adopted Son. On February 17, 2009, Wife filed a complaint in divorce with a claim for equitable distribution of marital property. The parties subsequently reconciled, though Wife never withdrew the divorce complaint. Years later, on January 1, 2017, Son died intestate at the age of 30 and without any children or heirs other than Wife. Through his employment as an attorney, Son had acquired four life insurance policies; he also had an IRA. With respect to the life insurance policies and IRA, the parties do not dispute the following: (1) Son named Wife as the sole beneficiary of each of the four life insurance policies and IRA;[1] (2) no marital assets were used to pay for the life insurance policies or fund the IRA; (3) upon Son's death, Wife received all of the proceeds of the four life insurance policies, which totaled $633,301.72, as well as $3,455.00 in total proceeds from

---

[1] While it is undisputed that Son named Wife as sole beneficiary of his IRA, the Court of Common Pleas of Bucks County (trial court) did not make a finding to this precise effect. On this point, we note that the trial court: (1) determined that Wife received the IRA proceeds "from [Son's] estate," (Trial Ct. Decree and Order, 7/22/2019, at 4), though Husband submits that "no estate was ever raised," (Husband's Brief at 13); (2) listed the IRA proceeds among the "proceeds and accounts received by Wife, in her name only, resulting from her son's passing," (Trial Ct. Decree and Order, 7/22/2019, at 4); and (3) observed that Son did not name Husband "as a beneficiary on any policy or successor on any accounts, or in any [w]ill," (Trial Ct. Decree and Order, 7/22/2019, at 4). As discussed below, there was disagreement in the Superior Court regarding the treatment of the IRA proceeds based on the trial court's failure to find that Son listed Wife as sole beneficiary on the IRA. In light of the trial court's findings and the fact that the parties do not dispute Wife's naming as sole beneficiary of Son's IRA, and given that the parties' arguments as to the proper characterization of the IRA proceeds are indistinguishable from their arguments pertaining to the life insurance proceeds, we likewise treat the insurance policy proceeds and IRA proceeds as one and the same—as passing to Wife by virtue of her designation as sole beneficiary—for purposes of this decision.

Son's IRA; and (4) Wife never jointly titled any proceeds from Son's passing in Husband's name or in the name of any other third party.

Approximately four months after Son's death, on March 27, 2017, the parties separated. Wife bought a house using a portion of the proceeds she received upon Son's passing. On April 6, 2017, Wife filed a praecipe to reinstate her divorce complaint. Husband then filed an answer and counterclaim seeking alimony. The parties attended a master's hearing on August 20, 2018. Thereafter, on August 31, 2018, the master issued a report containing recommendations relative to, *inter alia*, the entry of a divorce decree, equitable distribution, and alimony. On September 11, 2018, Husband filed a motion for a hearing *de novo*. The trial court granted the motion and conducted evidentiary hearings on February 2, 2019, March 29, 2019, and May 13, 2019.

On July 22, 2019, the trial court entered a decree and order terminating the marriage of Husband and Wife, distributing the marital estate, and obligating Wife to pay Husband alimony through January 1, 2027. Relevant here, the trial court determined that the proceeds of Son's life insurance policies and his IRA that Wife received upon Son's death were not marital property, citing Section 3501(a)(3) of the Divorce Code. The trial court further concluded that all investments, real estate, or other assets Wife purchased or acquired with those proceeds were likewise not marital property. In so doing, the trial court observed that Wife received the proceeds at issue in her name only; that Husband did not adopt Son; that Son did not name Husband "as a beneficiary on any policy or successor on any accounts, or in any [w]ill;" and that Wife never jointly titled any proceeds from Son's passing in Husband's name or in the name of any other third party. (Trial Ct. Decree and Order, 7/22/2019, at 4.)

Husband appealed to the Superior Court, challenging, *inter alia*, the trial court's determination that the proceeds from Son's life insurance policies and IRA were not

marital property under Section 3501(a)(3) of the Divorce Code. Addressing Husband's claim in its opinion issued pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(a), the trial court first agreed with Husband's position that the life insurance proceeds were not a bequest, devise, descent, or any other form of inheritance from Son, opining that it was "well established that the assignation of an individual as a life insurance beneficiary is a mere expectancy." (Trial Ct. Pa.R.A.P. 1925(a) Op., 9/16/2019, at 5 (relying upon *Knoche v. Mut. Life Ins. Co. of New York*, 176 A. 230, 230-31 (Pa. 1934)).) The trial court further observed that, because neither Son nor his estate ever possessed the life insurance policy proceeds themselves, Son could not have given those proceeds as gifts—testamentary or otherwise—to Wife.

Nonetheless, the trial court observed that Wife possessed the life insurance proceeds because Son "assigned the expectancy of th[e] insurance contracts specifically to [Wife] alone," which Son did as a gift—*i.e.*, "voluntarily, 'without [any] consideration or compensation as an incentive or motive for the transaction.'" (*Id.* (quoting *Bundy v. Wetzel*, 184 A.3d 551, 556 (Pa. 2018)).) The trial court noted that, while Wife did not have a legally protectable interest against Son extinguishing this expectancy during Son's life, "a contingent interest is still 'a thing of value which [the] courts, under appropriate circumstances, will protect.'" (*Id.* at 5-6 (quoting *Hunt v. Mestrezat*, 65 A.2d 389, 390 (Pa. 1949)).) The trial court further observed that "[a]ssignments of contingent interests are valid and are governed under the principles of contract law," which dictate that "the meaning of the contract will be ascertained from the writing alone when that meaning is clear and unambiguous," especially in cases involving sophisticated parties. (*Id.* at 6 (relying upon *Emps. Ins. of Wausau v. Dep't of Transp.*, 865 A.2d 825, 830-31 (Pa. 2005); *Pops PCE TT, LP v. R & R Rest. Grp., LLC*, 208 A.3d 79, 87 (Pa. Super. 2019), *appeal denied*, 223 A.3d 656 (Pa. 2020)).) The trial court then emphasized

that, when Son assigned the expectancy of his life insurance agreements to Wife, he did so in her name only; Son named Wife as sole beneficiary in each instance and did not include Husband as a beneficiary or even as a contingent beneficiary. The trial court, thus, inferred that Son, a licensed attorney, "knew precisely the legal effect of the words" used when he executed the insurance contracts conveying the life insurance expectancy to Wife alone, "presumably to ensure his mother was cared for should something befall him." (*Id.*) The trial court also reiterated that Wife never placed any of the life insurance proceeds into a joint account with Husband. Accordingly, the trial court concluded that the life insurance proceeds were not marital property.[2]

In a divided, published opinion, a three-judge panel of the Superior Court affirmed. *Goodwin v. Goodwin*, 244 A.3d 453 (Pa. Super. 2020). The Superior Court majority agreed with the trial court that the life insurance and IRA proceeds were not marital property, although its rationale differed from the trial court's. Specifically, the Superior Court concluded that the life insurance and IRA proceeds were gifts within the meaning of Section 3501(a)(3) of the Divorce Code. In support, the Superior Court opined that the life insurance and IRA proceeds vested in Wife upon Son's death prior to the date of the parties' separation and that Wife's receipt of the proceeds perfected the gift. Goodwin, 244 A.3d at 458. The Superior Court also observed that the parties agreed that the proceeds were not commingled into a joint account, that Wife used a portion of the money to buy a home solely in her name and put the remainder into accounts that were also solely in her name, and that Son used his own money to pay for the life insurance policies and fund the IRA. *Id.* at 459. The Superior Court continued by observing:

> The list of exceptions contained in Section 3501(a)(3) [of the Divorce Code] have a common element: the intent of the donor to transfer the

---

[2] The trial court did not conduct any analysis specific to the IRA proceeds in its Rule 1925(a) opinion.

property in question to only one of the spouses. The Divorce Code honors this intent, giving it priority over the general rules concerning the nature of property acquired during marriage. By listing someone as the sole beneficiary on an insurance policy or IRA, the giver makes the proceeds into a gift which vests at the time of death. Moreover, because such policies allow for the designation of co-beneficiaries and contingent beneficiaries, the failure to list any makes the intent of the giver clear. To find otherwise would make for a chaotic situation where certain forms of gifts would be considered marital property while other forms were not and the intent of the giver would be completely disregarded.

*Id.*

Noting the dearth of Pennsylvania precedent addressing the precise scenario at issue, the Superior Court identified two cases that classified life insurance proceeds as marital property, but based on distinguishable circumstances presented in those cases: *Sutliff v. Sutliff*, 522 A.2d 1144 (Pa. Super. 1987), *affirmed in part, reversed in part on other grounds, and remanded*, 543 A.2d 534 (Pa. 1988), and *Rohrer v. Rohrer*, 715 A.2d 463 (Pa. Super. 1998). In *Sutliff*, the Superior Court concluded that certain shares of stock were properly characterized as marital property notwithstanding the husband's claim that he purchased the shares with the proceeds of his father's life insurance policy and pension benefits, as the master found that those funds had been "commingled in a joint checking account used for various expenditures of the family" and the husband produced insufficient evidence to demonstrate that he used the funds to purchase the stock as alleged. *Sutliff*, 522 A.2d at 1150. In *Rohrer*, the Superior Court rejected a husband's claim that $80,000 should have been deducted from a portion of his father's company that was determined to be marital property, because that amount "came from the proceeds of an insurance policy on [the husband's] father's life, the premiums for which were paid by the father's company." *Rohrer*, 715 A.2d at 467-68. The Superior Court in *Rohrer* concluded that, because the husband and the father's company paid the premiums, the proceeds were marital property. *Id.* at 468. In the case *sub judice*, the

Superior Court observed that neither *Sutliff* nor *Rohrer* concluded that life insurance proceeds were excluded from the meaning of Section 3501(a)(3) of the Divorce Code as a general matter, and it read *Sutliff* to imply that, "had the proceeds of the life insurance policy and pension benefits not been commingled into the joint checking account, they would not have been considered marital property." *Goodwin*, 244 A.3d at 459.

The Superior Court next turned to various cases from other jurisdictions for guidance, beginning with *Amato v. Amato*, 596 So. 2d 1243, 1244-45 (Fla. Dist. Ct. App. 1992) (holding that proceeds of life insurance policy issued to child of marriage was marital property, though proceeds were paid solely to mother, because mother placed proceeds in joint account that contained other joint funds and from which mother and father both drew, thereby gifting half to father), and *Weekes v. Weekes*, 611 P.2d 133, 133-34 (Idaho 1980) (holding that life insurance proceeds from policy purchased by child of marriage were mother's separate property where mother was named primary beneficiary and father was named secondary beneficiary). In view of these two decisions, the Superior Court concluded that "the instant matter, where the son was not a child of the marriage, husband was not named as a secondary beneficiary, and the funds were never commingled, present[ed] an even stronger case for finding the proceeds were not marital property." *Goodwin*, 244 A.3d at 460.

The Superior Court then relied upon five cases in particular to hold that the life insurance and IRA proceeds were not marital property and, instead, were gifts within the meaning of Section 3501(a)(3) of the Divorce Code: *In re Marriage of Goodwin*, 606 N.W.2d 315, 319 (Iowa 2000) (holding son of marriage's life insurance benefits designated solely to mother constituted gifts or inheritances and were thus not marital property); *Angell v. Angell*, 777 N.W.2d 32, 34-37 (Minn. Ct. App. 2009) (holding son of marriage's military life insurance and death benefits naming mother as sole beneficiary

were gifts), *affirmed*, 791 N.W.2d 530 (Minn. 2010); *In re Marriage of Sharp*, 823 P.2d 1387, 1388-89 (Colo. App. 1991) (holding mother's life insurance benefits were gifts to son and not marital property); *Fields v. Fields*, 643 S.W.2d 611, 613-615 (Mo. Ct. App. 1982) (holding that bank certificates of deposit were husband's nonmarital property because source of funds for one was "bequest" or "descent" from his deceased son's estate and source of funds for another was "gift" of deceased son's insurance proceeds husband received as beneficiary); and *Brunson v. Brunson*, 569 S.W.2d 173, 176-77 (Ky. Ct. App. 1978) (holding that money in account was husband's nonmarital property because it was traced to proceeds husband received from two of his father's life insurance policies, but that funds husband received from father's third life insurance policy, which husband commingled into farming business, was marital property). The Superior Court explained that it found these decisions to be "extremely persuasive," as each of them involved identical or substantially similar statutory language to Section 3501(a)(3), life insurance proceeds alone or in combination with other inherited property, and a finding that the non-commingled property at issue was not marital property. *Goodwin*, 244 A.3d at 460.

Finally, the Superior Court observed that "[t]his case highlights the difficulties which occur when the Probate[], Estates and Fiduciaries ("PEF") Code[, 20 Pa. C.S. §§ 101-8815,] and the Divorce Code collide." *Id.* at 460-61. Acknowledging that the PEF Code and this Court have designated life insurance to be non-testamentary in nature,[3] the Superior Court reiterated that the few courts that have addressed "the treatment of non-testamentary inheritances in divorce . . . have honored the intent of the giver and

---

[3] Section 6108(a) of the PEF Code, 20 Pa. C.S. § 6108(a), provides, in relevant part, that "[t]he designation of beneficiaries of life insurance[] . . . shall not be considered testamentary and shall not be subject to any law governing the transfer of property by will." We discuss this provision and the case law alluded to by the Superior Court in further detail below.

treated the property as non[]marital" under their respective divorce codes. *Goodwin*, 244 A.3d at 461. The Superior Court further emphasized that its conclusion that the life insurance and IRA proceeds at issue constituted gifts falling within Section 3501(a)(3) of the Divorce Code aligned with the holdings of those courts. *Id.* Accordingly, the Superior Court concluded that Husband was not entitled to relief.

In a concurring and dissenting opinion, Judge McCaffery disagreed with the majority's disposition of Husband's claim relative to the treatment of Son's life insurance and IRA proceeds. With respect to the life insurance proceeds, Judge McCaffery began his analysis by examining the statutory language of Section 3501 of the Divorce Code and Section 6108(a) of the PEF Code. Judge McCaffery observed that, because Son died while Husband and Wife were married, Son's life insurance proceeds were presumed to be marital property pursuant to Section 3501(b) of the Divorce Code, 23 Pa. C.S. § 3501(b) (providing that "[a]ll real or personal property acquired by either party during the marriage is presumed to be marital property"). Judge McCaffery further observed that, to establish otherwise, Wife had the burden to show that the proceeds were acquired by a method set forth in Section 3501(a). *See* 23 Pa. C.S. § 3501(b) (providing that "[t]he presumption . . . is overcome by a showing that the property was acquired by a method listed in subsection (a)"). Turning to Section 3501(a)(3) of the Divorce Code and relying primarily upon Section 6108(a) of the PEF Code, Judge McCaffery agreed with the trial court that Son's life insurance proceeds were not testamentary bequests, devises, or descents. Judge McCaffery also agreed with the trial court that, because the life insurance funds were never in Son's possession, the funds themselves could not constitute gifts. Judge McCaffery, however, disagreed with the trial court's conclusion that Son's naming of Wife as the beneficiary was a gift within the meaning of Section 3501(a)(3) of the Divorce Code. Rather, Judge McCaffery

would conclude that where "the naming of a beneficiary on a life insurance policy . . . is not a conveyance of the insured's assets," the naming of a beneficiary similarly cannot be a "gift" given by the insured to the beneficiary. *See* [*Lindsey v. Lindsey*, 492 A.2d 396, 398 (Pa. Super. 1985)]. Likewise, where the beneficiary "has but a mere expectancy," she cannot have received a "gift." *See Knoche*, 176 A. at 230-31.

*Goodwin*, 244 A.3d at 467-68 (McCaffery, J., concurring and dissenting). Opining that Husband's claim as it concerned the life insurance proceeds at issue could "be resolved by applying the plain meaning of Section 3501 of the Divorce Code and Section 6108(a) of the PE[F Code]," Judge McCaffery would not consider how other jurisdictions resolved similar claims and believed that "[a]ny exception or accommodation in the statute must come from our legislature, and not by th[e Superior] Court's selective modification of how the statute should apply in certain circumstances." *Id.* at 468. Thus, Judge McCaffery would have reversed the trial court's finding that Son's life insurance proceeds were "gifts" to Wife and excluded from the marital estate under Section 3501(a)(3), and he would have remanded "for the trial court to enter an amended equitable distribution order." *Id.*

Judge McCaffery then turned to the majority's treatment of Son's IRA proceeds and its conclusion that the IRA proceeds were likewise "gifts" within the meaning of Section 3501(a)(3) of the Divorce Code. Judge McCaffery opined that, while Husband averred in his appellate brief that Wife was the named beneficiary on the IRA, the trial court made no such finding. Rather, the trial court "simply stated that Wife 'received [these] funds from [Son's] estate.'" (*Id.* (quoting Trial Ct. Pa.R.A.P. 1925(a) Op., 9/16/2019, at 2; Trial Ct. Decree and Order, 7/22/2019, at 4).) Judge McCaffery, thus, would have directed the trial court to determine on remand whether Son's IRA proceeds, "or property acquired in exchange for" those proceeds, were marital property under Section 3501. *Id.* (quoting 23 Pa. C.S. § 3501(a)).

## II. ISSUE

This Court granted discretionary review to consider the following issue, as stated by Husband:

> When it held that life insurance and IRA proceeds paid to only one spouse—here, [Wife], the sole revocable beneficiary—was property "acquired by gift . . . bequest, devise or descent" and, therefore, not subject to equitable distribution, did the Superior Court erroneously disregard long-established Pennsylvania law, which provides that a designation of a beneficiary is not a "gift" and, instead, look to decisions from other states, whose laws are different?

*Goodwin v. Goodwin*, 263 A.3d 244 (Pa. 2021) (*per curiam*). This issue requires us to engage in statutory interpretation and, therefore, presents a question of law. *Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Labor & Indus.*, 162 A.3d 384, 389 (Pa. 2017). Accordingly, "our standard of review is *de novo*, and our scope of review plenary." *Id.*

## III. DISCUSSION

We are guided in our analysis by the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §§ 1501-1991, which provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). Generally, the plain language of the statute "provides the best indication of legislative intent." *Miller v. Cnty. of Centre*, 173 A.3d 1162, 1168 (Pa. 2017). If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then "we cannot disregard the letter of the statute under the pretext of pursuing its spirit." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa. C.S. § 1921(b)). In this vein, "we should not insert words into [a statute] that are plainly not there." *Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, 52 A.3d 241, 245 (Pa. 2012). When the statutory language is ambiguous, however, we may ascertain the General Assembly's intent by considering the factors set forth in Section 1921(c) of the Statutory Construction Act, 1 Pa. C.S. § 1921(c), and other rules

of statutory construction. *See Pa. Sch. Bds. Ass'n, Inc. v. Pub. Sch. Emps. Ret. Bd.*, 863 A.2d 432, 436 (Pa. 2004) (observing that "other interpretative rules of statutory construction are to be utilized only where the statute at issue is ambiguous"). Additionally, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," though "technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in [the Statutory Construction Act] shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa. C.S. § 1903(a). "We also presume that 'the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable,' and that 'the General Assembly intends the entire statute to be effective and certain.'" *Berner v. Montour Twp. Zoning Hearing Bd.*, 217 A.3d 238, 245 (Pa. 2019) (quoting 1 Pa. C.S. § 1922(1)-(2)).

Before the Court, Husband reiterates his position that the life insurance and IRA proceeds do not fall within the plain meaning of "[p]roperty acquired by gift, . . . bequest, devise or descent" as used in Section 3501(a)(3) of the Divorce Code, and, thus, they are marital property subject to equitable distribution. Echoing Judge McCaffery's minority opinion, Husband emphasizes that the proceeds are presumed to be marital property pursuant to Section 3501 unless Wife proves that they were acquired by a method listed in one of the exceptions set forth in that provision.[4] Turning to the rules of statutory construction and Section 3501(a)(3), Husband notes that the Divorce Code does not define "gift," "bequest," "devise," or "descent." Husband submits that the default definitions provided in Section 1991 of the Statutory Construction Act, 1 Pa. C.S. § 1991, and dictionary definitions of "bequest," "devise," and "descent" all relate to the

---

[4] To be clear, it is undisputed that Wife "acquired" the proceeds "during the marriage," irrespective of when the proceeds were actually paid, because her right to the proceeds vested upon Son's death, which occurred while the parties were still married.

testamentary disposition of property or disposition of property by inheritance. Husband further contends that, in Pennsylvania, an inter vivos gift is a gift "between the living" and requires the satisfaction of the following two elements: "(1) an intention to make an immediate gift; and (2) such actual or constructive delivery to the donee as will divest the donor of dominion and control of the subject matter of the gift." (Husband's Brief at 27 (relying upon *Ashley v. Ashley*, 393 A.2d 637, 639 (Pa. 1978)).) Husband further adds that it is well settled in Pennsylvania that the naming of a revocable beneficiary on a life insurance policy is neither an inter vivos nor testamentary conveyance of any sort as evidenced by Section 6108 of the PEF Code and our case law. Indeed, Husband claims that our precedent is clear that the naming of a revocable beneficiary on a life insurance policy is *sui generis*—*i.e.*, a thing of its own—that creates only a mere expectancy, does not establish the insured's intent, and otherwise does not fall within any of the terms set forth in Section 3501(a)(3) of the Divorce Code.

In light of the foregoing, Husband contends that the proceeds themselves could not constitute inter vivos gifts because Son never possessed the life insurance proceeds in the first instance and Son never relinquished ownership of the IRA proceeds during his life; Wife did not obtain any of the proceeds at issue until Son died. Husband also argues that Son had no intent to make an "immediate" gift and never divested himself of ownership or control of the policies and IRA or their proceeds during his life, retaining an unrestricted right to change the beneficiary at any time until he passed. Husband adds that Wife could not have acquired the proceeds by testamentary "gift," "bequest," "devise," "descent," or other inheritance because they did not pass through an estate. Addressing the lower court decisions, Husband faults the trial court for concluding that the proceeds were nonmarital property on the basis that "Son assigned the expectancy of the insurance contracts to Wife as a gift," which Husband alleges is "a novel legal principle." (Husband's

Brief at 19.) Husband adds that the Superior Court majority erred by disregarding well-established Pennsylvania law on the matter in favor of distinguishable or otherwise inapt jurisprudence from other states "in an attempt to effect Son's purported intention" and fit the proceeds within the meaning of the term "gift" as used in Section 3501(a)(3) of the Divorce Code.[5] (Husband's Brief at 20.) Husband claims that, in contrast, Judge McCaffery was correct in looking solely to Pennsylvania law and concluding that Section 3501(a)(3) is inapplicable to the proceeds at issue. Husband argues that, until the legislature dictates otherwise, nothing in the Divorce Code excludes the life insurance and IRA proceeds from marital property.

Wife counters that the life insurance and IRA proceeds fall within the meaning of Section 3501(a)(3) of the Divorce Code and, therefore, the proceeds are not subject to equitable distribution. Arguing that the proceeds constitute "gifts" under that provision, Wife submits that Section 3501(a)(3) does not dictate what type of gift qualifies as an exception, given that the Divorce Code does not define the term. Relying upon the rules of statutory construction, Wife argues that the common and approved usage of the word "gift" supports the conclusion that the proceeds at issue are "gifts" under Section 3501(a)(3).[6] Wife also notes that, "in this Commonwealth, '[e]ssential to the making of a valid gift are donative intent on the part of the donor and delivery of the subject matter to the donee.'" Wife's Brief at 28 (quoting *Wagner v. Wagner*, 353 A.2d 819, 821 (Pa. 1976)). Wife additionally echoes the Superior Court majority's observation that the

---

[5] Husband also challenges the lower court decisions insofar as they opined as to Son's intent that the proceeds at issue be paid solely to Wife. In support, Husband argues that the only record evidence relative to Son's intent was his naming Wife as revocable beneficiary, which Husband claims does not sufficiently demonstrate that Son intended for the proceeds to be Wife's nonmarital property for equitable distribution purposes.

[6] Wife points to Black's Law Dictionary, which defines "gift" as "[t]he voluntary transfer of property to another without compensation." *Gift*, Black's Law Dictionary 831 (11th ed. 2019).

list of exceptions in Section 3501(a)(3) "'have . . . the intent of the donor to transfer the property in question to only one of the spouses" as a common element and that the "Divorce Code honors this intent [by] giving it priority." (Wife's Brief at 27-28 (quoting *Goodwin*, 244 A.3d at 459).) Wife argues that, based on the foregoing, it is clear that the legislature intended the life insurance and IRA proceeds Wife received to be gifts and that she met her burden to establish that the proceeds are "gifts" here. In support, Wife notes that she has demonstrated that Son alone paid the life insurance premiums and funded the IRA, Son named Wife as sole beneficiary of the insurance and IRA proceeds (proving the requisite donative intent of Son), the proceeds vested in Wife upon Son's death, and Wife's receipt of the proceeds from Son via the life insurance policies and IRA perfected the gift. Wife adds that at no point did she commingle or otherwise transmute the proceeds into marital property.

Wife submits that, in taking a contrary view of the proceeds at issue, Husband fails to point to a single statute or case under the Divorce Code in support of his position. Wife adds that, while Husband relies heavily upon Pennsylvania law pertaining to matters outside of the Divorce Code, and specifically relating to the PEF Code and testamentary distributions, any such reliance is improper in this matter brought under the Divorce Code, which constitutes "the exclusive means of property determinations between divorcing spouses." (Wife's Brief at 31.) Indeed, though Wife agrees that the Court is to engage in statutory construction to discern the meaning of "gift," Wife eschews any reliance on the PEF Code and related case law to determine the term's definition for purposes of Section 3501(a)(3) of the Divorce Code, as there is no indication from the legislature or precedent that the PEF Code is controlling on the matter. Wife also notes that the cases Husband relies upon are distinguishable insofar as they pertain to so-called "scorned beneficiaries"—*i.e.,* individuals who were once named beneficiaries of life insurance

proceeds but were replaced by other individuals as beneficiaries prior to the insured's death—claiming a right to the subject life insurance proceeds. (Wife's Brief at 41 n.24.) Finally, Wife argues that Pennsylvania case law supports the Superior Court's decision as evidenced by *Rohrer* and *Sutliff* in particular, and that the Superior Court properly relied upon case law from sister states, which likewise supports the Superior Court's holding.

We begin our analysis by setting forth the relevant statutory framework. Section 3501 of the Divorce Code provides, in relevant part:

> (a)     General rule.--As used in this chapter, "marital property" means all property acquired by either party during the marriage and the increase in value of any nonmarital property acquired pursuant to paragraphs (1) and (3) as measured and determined under subsection (a.1). However, marital property does not include:
>
> . . . .
>
>> (3)  Property acquired by gift, except between spouses, bequest, devise or descent or property acquired in exchange for such property.
>
> . . . .
>
> (b)     Presumption.--All real or personal property acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a).

23 Pa. C.S. § 3501(a)(3), (b).

It is undisputed that, because Son died while Husband and Wife were still married, the life insurance and IRA proceeds at issue are presumed to be marital property pursuant to Section 3501 of the Divorce Code, unless Wife proves that the proceeds were acquired by a method set forth in Section 3501(a). Section 3501(a)(3) being the relevant provision here, we note that, notwithstanding Section 3501(a)(3)'s inclusion of the terms "bequest," "devise," and "descent," the crux of this matter concerns whether the proceeds at issue constitute "gifts" as the term is used in that provision. The Divorce Code does not define the term "gift," and Section 1991 of the Statutory Construction Act does not provide a

default definition for the term. Black's Law Dictionary defines "gift" as "[t]he voluntary transfer of property to another without compensation," as well as "[a] thing so transferred." *Gift*, Black's Law Dictionary 831 (11th ed. 2019); *see also Gift,* Webster's Third New International Dictionary 956 (3d ed. 1993) (defining "gift" as "something that is voluntarily transferred by one person to another without compensation").

In view of the foregoing definitions and the facts of this case, we agree with the Superior Court that Wife acquired the life insurance and IRA proceeds by "gift" under Section 3501(a)(3) of the Divorce Code. Son paid the life insurance premiums and funded the IRA. He named Wife, his mother, as sole beneficiary of the four life insurance policies and IRA. In so doing, Son created gifts of the proceeds, contingent on his death, which he intended for Wife alone to receive as implicitly found by the trial court given her status as the sole named beneficiary. Son then died, perfecting the gifts to Wife. In short, by virtue of funding the life insurance policies and IRA, naming Wife sole beneficiary thereof, and then unfortunately passing away, prompting the payout of the policies and IRA to Wife, Son "voluntarily transferred"—via the life insurance policies and IRA—"property to [Wife] without compensation." *See Gift*, Black's Law Dictionary 831 (11th ed. 2019). As such, the proceeds qualify as property acquired by "gift" within the plain meaning of the term in Section 3501(a)(3) of the Divorce Code as it is commonly used and understood.

Insofar as the matter concerns whether the proceeds constitute valid "inter vivos" gifts, through strict satisfaction of the legal requirements pertaining thereto, or "testamentary" gifts, in light of the PEF Code or otherwise, we are unpersuaded by Husband's argument that the proceeds must fit neatly into either specific category in order to constitute "gifts" as the term is generally used in Section 3501(a)(3) of the Divorce Code, particularly given the common understanding of the term as described above. Further, contrary to Husband's argument, our conclusion that the life insurance and IRA

proceeds constitute property acquired by "gift" is not wholly unprecedented in this Commonwealth. In *Smith v. Metropolitan Life Insurance Company of New York*, 71 A. 11 (Pa. 1908), a case not cited by either party, this Court specifically observed that "[t]he naming [in a life insurance policy] of a beneficiary to whom payment is to be made *is a gift of a benefit in future, but is contingent on the circumstances*." *Smith*, 71 A. at 12 (emphasis added). The Court described such circumstances as including "the donor . . . keep[ing] the policy alive by continuing to pay the premiums[, which] is contingent on his doing so voluntarily," and, by implication of "the nature of the thing given," the beneficiary surviving the insured. *Id.* In the instant matter, these contingencies—Son's voluntary payment of the premiums and, unfortunately, his death—occurred, thereby vesting the right to the proceeds at issue in Wife, whose receipt of the proceeds, again, perfected the gift. This is in contrast to the pronouncements cited by Husband describing the nature of the right (or lack thereof) that a named revocable beneficiary has *during the life of the insured*. When viewed in the broader context of *Smith* and the pronouncements upon which Husband relies, the infirmity in Husband's position becomes apparent.

To be clear, this case does not involve a dispute regarding to whom the life insurance and IRA proceeds are owed under the terms of the governing documents themselves, nor does it pertain to the treatment of the proceeds under the PEF Code in the context of a testamentary or intestate distribution. Rather, the instant matter concerns the discrete issue of whether, having received the proceeds "during the marriage," Wife overcame the presumption that the proceeds were "marital property" by showing that they constituted "[p]roperty acquired by gift, . . . bequest, devise or descent" under Section 3501(a)(3) of the Divorce Code. *See* 23 Pa. C.S. § 3501(a)(3), (b). For the reasons stated, we conclude that Wife has demonstrated that the life insurance and IRA proceeds are property she acquired by "gift" under a plain reading of the term as used in

that provision.[7] In so doing, and while not necessary to our disposition, we nonetheless note our agreement with the Superior Court's observations that "[t]he list of exceptions contained in Section 3501(a)(3) have a common element: the intent of the donor to transfer the property in question to only one of the spouses," and that "[t]he Divorce Code honors this intent, giving it priority over the general rules concerning the nature of property acquired during marriage." *Goodwin*, 244 A.3d at 459. Our holding is consistent with this intent behind Section 3501(a)(3) and the intent of Son as the insured, as the trial court implicitly found based upon Son's designation of Wife as sole beneficiary to the proceeds at issue. We also find it noteworthy that, while again not dispositive, our holding is in harmony with authority from other jurisdictions as discussed herein. Accordingly, we affirm the order of the Superior Court.

Chief Justice Baer and Justices Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

---

[7] We further reject any notion that the PEF Code must inform our analysis conducted herein under the Divorce Code. First, the PEF Code and Divorce Code do not bear a sufficient relationship with respect to the treatment of the proceeds at issue such that the statutes must be read in pari materia. *See* 1 Pa. C.S. § 1932(a)-(b) (providing that "[s]tatutes in pari materia shall be construed together, if possible, as one statute" and that "[s]tatutes . . . are in pari materia when they relate to the same persons or things or to the same class of persons or things"). Second, the rule requiring in pari materia construction of statutes applies in instances of ambiguous statutory language. *See In re McFarland's Estate*, 105 A.2d 92, 95-96 (Pa. 1954) (explaining that "the rule requiring statutes in pari materia to be construed together is only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and that it cannot be invoked where the language of a statute is clear and unambiguous"). Given that the term "gift" as used in Section 3501(a)(3) of the Divorce Code is unambiguous, we do not rely on this principle of statutory construction.